UP RIVER ICE CO. v. DENLER.

1. CONTRACTS—AGREEMENT NOT TO ENGAGE IN BUSINESS—EQUITY JURISDICTION.

Evidence in support of a bill to enjoin defendant from carrying on an ice business in a particular locality, in violation of his agreement with complainant's assignor, that complainant has eleven ice houses, containing 8,000 tons of ice, five wagons for delivery, and many customers, while defendant has four wagons engaged in delivering ice to a large number of customers in direct competition with complainant, constitutes a sufficient showing that complainant is damaged by the continuance of defendant's business to an extent that justifies the interference of a court of equity, if he is otherwise entitled to relief.

2. SAME—CONSIDERATION.

The purchase by an individual of a stockholder's interest in a corporation affords a sufficient consideration for a contemporaneous agreement by the seller not to engage in the business carried on by the corporation.

3. SAME—CONSTRUCTION—PROHIBITED TERRITORY.

> An agreement by a seller of stock in a corporation doing an ice business in a city, not to engage in the ice business in such city, "or adjacent thereto," sufficiently defines the prohibited territory, and means that he will not engage in such business within the city, or any territory which may reasonably be reached for delivery by the company with its teams and wagons.

4. SAME—RESTRAINT FOR UNLIMITED TIME—VALIDITY.

> The fact that there is no limit as to the length of time [for which the seller must refrain from carrying on the business in the prohibited territory does not render the agreement invalid.

5. SAME—ASSIGNABILITY.

> The right to enforce such agreement may be passed by assignment to the corporation.

6. SAME—BUSINESS IN WIFE'S NAME.

> A husband who has made a valid agreement to refrain from carrying on a particular business in a certain place, either as principal, agent, or employé, will not be permitted to build up and carry on such a business, in his own interest, under the guise of doing business for his wife.

Appeal from St. Clair; Vance, J. Submitted June 18, 1897. Decided September 14, 1897.

Bill by the Up River Ice Company to enjoin George Denler and Alice Denler from carrying on an ice business at Port Huron. From a decree dismissing the bill, complainant appeals. Reversed.

*Atkinson & Wolcott*, for complainant.

*Avery Bros. & Walsh*, for defendants.

LONG, C. J. The complainant is a corporation doing an ice business at Port Huron. On June 26, 1889, defendant George Denler owned 140 shares of its capital stock, of the face value of $3,500. He was the general manager of the company. On that day he sold out all of his interest to Albert D. Bennett under the following contract:

"This agreement, made and entered into between George Denler, of the first part, and Albert D. Bennett, of the second part, *Witnesseth:*

"In consideration of the purchase made this day by the party of the second part of stock to the amount of $3,500 in the Up River Ice Company, the said party of the second part agrees to assume the payment of a note made by George Denler, and payable to the Up River Ice Company, for $200, and dated March 1, 1889, and due on demand, and also one-half of two notes made by John G. O'Neill and George Denler, payable to Jacob Denler, for $300 each, due and payable on August 1, 1889, and on December 1, 1889.

"In consideration of the purchase and sale aforesaid, the said George Denler agrees and binds himself in the penal sum of $1,000 that he will not engage in the ice business in Port Huron, or adjacent thereto, at any time, either as principal, agent, or employé."

It is claimed by the bill that, at the time this agreement was made, Denler also agreed with the complainant orally that he would not engage in the ice business in Port Huron, or adjacent thereto, at any time, either as principal, agent, or employé. Thereafter Bennett assigned to John Hayes all his rights under that contract, as follows:

"I hereby assign to John Hayes all my rights under the within agreement, and any right of action accruing thereunder; any action that he may commence thereunder to be in his name, and at his own cost and expense."

On April 13, 1896, Hayes assigned in writing to the Up River Ice Company, the complainant, all his right of action against Denler, including the right to restrain his engaging in the ice business at Port Huron, and authorizing the complainant to enforce all rights that belonged to him directly or indirectly against Denler growing out of his agreement with Bennett and with the company. On the same day Bennett assigned to the complainant as follows:

"Whereas, the purchase by the undersigned of $3,500 of stock in the Up River Ice Company, a corporation, was largely induced by the agreement of George Denler not to

engage in the ice business, which agreement was made in the office of the Up River Ice Company, and for its benefit, as well as for the benefit of the undersigned; and, further, in consideration of the premises, I hereby sell and assign to the Up River Ice Company all rights of action to enforce the agreement with Denler, or to restrain him from engaging in the ice business in violation thereof, authorizing the company to enforce it in its own name."

It appears that, at the time Denler was a member of the company, John G. O'Neill owned 240 shares of the capital stock, Peter J. O'Neill 20 shares, and the balance of 140 shares was owned by Denler. John G. O'Neill was president of the company, and Denler was its superintendent. The complainant continued business after Denler went out, and, it is claimed, Denler thereafter bought out the Crystal Ice Company in that city, and again engaged in the ice business, contrary to his agreement; that, while the company was carried on in the name of the Crystal Ice Company, Denler's name appeared as manager, and on the ice tickets which were sold appeared his name as proprietor; and, though he claimed the business was purchased by his wife, Alice Denler, the other defendant, yet in fact it was his business, and carried on for his interest and benefit. This bill was filed to perpetually restrain the defendants from carrying on the ice business in the city of Port Huron, and to restrain defendant George Denler from engaging in the ice business, either as principal, agent, or employé, in accordance with the agreement heretofore set out. On the hearing below the court dismissed complainant's bill. From that decree the complainant appeals.

It is contended on the part of the defendants:

1. That the contract on the part of Denler not to engage in the ice business is void, as being unlimited in time, and because given without consideration.

2. That the contract is a personal one in its nature, and enforceable only by the person in whose interest it was made.

3. That contracts of this character are enforceable only when connected with the good will of some business to

which they attach; that in this case the subject-matter was the stock transferred, and the agreement at most could but attach to this stock, which is now owned by Mr. Hayes, and not by the complainant.

4. That a court of equity must have the actual parties in interest before it to determine rights; that Mr. Hayes is the only man who could maintain this action, if anybody can, he being the owner of the stock.

5. That the manner in which the parties treated this matter immediately after its execution constituted an abandonment, and, being once abandoned, it could not be reinstated except by the joint action of the covenantor and the covenantee; that in this the defendants mean the employment of Denler by the complainant company for nearly a year after the execution of the agreement in the prohibited business; and that, therefore, there was a license on the part of Bennett, while the owner of the stock, that Denler might engage in the ice business.

6. That there is no showing that the complainant has suffered damage to the extent of $100, and that is not sufficient to call for the interference of a court of equity.

7. That no relief can be granted against Alice Denler, as the proofs show that it is her property, and she was not a party to the agreement.

There is one other claim made, and that is that the public has some interest in the matter, as the evidence shows that the entire ice on hand in all the ice houses in Port Huron, when this evidence was taken, would be needed for the use of the people.

On the hearing John G. O'Neill was called as a witness, and testified to the arrangement made between Denler and Bennett; that he (the witness) was president of the company. He says:

"Mr. Bennett came into the store either the day or the second day before the 26th of June, and asked me how I would like him for a partner. He said he was talking of making a trade with Denler for some stock in the ice company. * * * I said, before he made any trade he wanted to get an agreement from Denler that he would not engage in the ice business again. A day or two afterwards Bennett came in with Denler, and the matter was then spoken of by both Bennett and myself, and I drew the agreement."

The witness was asked:

"Independent of the writing, if anything, what was said in reference to that,—as to his not engaging in the ice business?

"*A.* I, personally, as the representative of the ice company, asked Mr. Denler if he was willing not to engage in the ice business if he got the transfer of the stock, and he said he was; that he had had enough of it."

The witness further testified that at that time Denler was indebted to the complainant; that the complainant had loaned him $200 in March, 1889, and that amount was still owing; that he was indebted on two other notes of $300 each, which were to be paid from the earnings of the ice company. It appeared that there was a company called the City Ice Company, prior to 1888, that was owned by George and Jake Denler. A consolidation was had between that company and the complainant. In the arrangement, O'Neill and George Denler bought out the interest of Jake Denler. O'Neill was asked on the witness stand to state whether the subject of Jake Denler's not engaging in the ice business was discussed at the time he went out of the business, and the witness testified that it was discussed between himself and George and Jake Denler, and that an agreement was made by Jake Denler with them that he would not engage in the ice business.

It appears that the plant owned by the complainant at the time Denler sold his stock was worth about $8,000. Some additions were made to the business thereafter, so that, at the time of the filing of this bill, complainant had eleven ice houses, containing about 8,000 tons of ice, five wagons delivering ice, and many customers. At the time the proceedings were commenced, the Crystal Ice Company, operated by George Denler, had four wagons delivering ice, and a large number of customers; and it is claimed by the complainant, and, we think, sustained by the testimony, that the business conducted by Denler was in direct competition with complainant's business.

The court below, so far as shown by this record, made

no findings, and gave no reasons for dismissing complainant's bill, except, as stated in the decree itself, that "the bill of complaint filed herein is on the part of the complainant entirely wanting in equity, and the same is therefore dismissed."

The rule is that contracts of this nature will be enforced in equity where the restraint is only partial, being limited as to time and place, and where reasonable grounds exist for the restraint, and where it is founded on a good consideration. 2 High, Inj. § 1167. In *Hubbard* v. *Miller*, 27 Mich. 15 (15 Am. Rep. 153), a contract was entered into by which Hubbard purchased all the stock of Miller & Co., and a contract was entered into as follows:

"In consideration of the above sale, we agree not to keep well-drivers' tools or fixtures, and not to engage in the business of well-driving, after this date."

It was objected that there was no sufficient consideration for the contract, and that the restraint imposed upon Miller & Co. by the contract was void, because general and unlimited as to place. The contract was held valid, and a perpetual injunction issued. The court found that there was a sufficient consideration. As to the contract itself, it was said: "And there is no reason for holding that, without the restraint contracted for, complainant would have been willing to purchase for the price he gave; nor can we say that the vendors could have sold at that price without such stipulation." As to the place within which the restraint was to be held effective, it was held that it should include Grand Haven and such limits about that city as the business there located would naturally and reasonably embrace, and not to be construed as such a general and unlimited restraint of trade as to be void; that the contract was fair, reasonable, and valid.

In *Beal* v. *Chase*, 31 Mich. 490, the contract was for the purchase of Dr. Chase's receipt books, with the good will of the business of printing and publishing, and also

the right to the use of the name of Dr. Chase in connection with said books.   It was there agreed as follows:

"The said party of the first part also agrees that, while said Beal remains in said business of printing and publishing in Ann Arbor, he will not, either directly or indirectly, engage in the business of printing and publishing in the State of Michigan."

This contract was held valid, and the injunction issued.

The rule was stated by the vice chancellor in *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 353, with great clearness.   It was said:

"All the cases, when they come to be examined, seem to establish this principle:   That all restraints upon trade are bad, as being in violation of public policy, unless they are natural, and not unreasonable for the protection of the parties in dealing legally with some subject-matter of contract.   The principle is this:   Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent by any contract that he enters into.   On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and, in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do that does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation, however restrictive it is, provided that restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract."

This case was cited with approval by this court in *Beal* v. *Chase, supra.*

We think there was a consideration for the contract in the present case.   We are not to inquire into the adequacy of the consideration, but whether there was a legal consideration to support it.   Denler received his price for the

stock in the company, and upon the agreement not to enter into the ice business in Port Huron or adjacent thereto.

That the contract is not unreasonable in its terms we are also satisfied. The limit of territory is set out in the contract with sufficient clearness. It means within the city, and in any territory adjacent which might reasonably be reached for delivery of ice by the Up River Ice Company with its teams and wagons. It is evident from the terms of the written contract and the testimony of O'Neill that there was a full and fair understanding between Denler, Bennett, and O'Neill that the contract did not have reference simply to Bennett's individual interest in the ice company by reason of the stock held by him, but had reference to the business then being done and to be done by the company, and that Denler was not thereafter to do an ice business in Port Huron and vicinity which would come in competition with the company. The contract was brought about by O'Neill. He insisted that it should be made if Bennett purchased the Denler stock and Denler went out of that company, and he testifies that Denler agreed not to again engage in the ice business. The sale to Bennett carried the good will of the business, so far as Denler had an interest therein and could convey it. While there was no limit of time, the contract was not void for that reason. *Jacoby* v. *Whitmore*, 49 Law T. (N. S.) 335, and cases there cited. This case is reported in 28 Alb. Law J. 510. The contract in *Hubbard* v. *Miller*, *supra*, had no fixed limit of time, and yet was held valid.

But it is said that the complainant could take no interest in the contract as assignee. We have proceeded so far upon the assumption that the contract to which O'Neill testified was made in the interest of the company, and was supported by some consideration. But, even if this were not the fact, yet the written contract made with Bennett came to the company by assignment; and we think the complainant acquired all the rights of Bennett by these assignments. That very question was considered

in *Jacoby* v. *Whitmore, supra.* The original contract was made between Whitmore and one Martin Cheek. Thereafter Cheek assigned to plaintiff all his beneficial interest and good will in the business, etc., and it was held that plaintiff took by this assignment all the rights and interests which Cheek had under the contract. In the present case the complainant company was directly interested in protecting itself from the competition of Denler. The company was composed of the two O'Neills and Hayes. Hayes had taken an assignment of the Denler contract, and turned such rights over to the company by assignment, and we are of the opinion that the company had the right to the enforcement of the contract.

It is said that the business sought to be restrained is not that of Denler, but belongs to his wife. We think the proofs show that it was a business started and built up by Denler, and carried on in his interest. The question is ruled by *Thompson* v. *Andrus,* 73 Mich. 551.

The other questions raised are not, in our judgment, of importance, and will not be discussed. The court below was in error in dismissing complainant's bill. That decree will be reversed, and a decree entered here in favor of the complainant in accordance with the prayer of its bill, with costs of both courts.

The other Justices concurred.