Argued February 4, reversed and dismissed February 18, rehearing denied April 1, 1919.

# FEENAUGHTY *v.* BEALL.*

(178 Pac. 600.)

**Contracts—Nature of Obligation.**

1. A "contract" is an agreement between two or more parties, competent for that purpose, upon a sufficient consideration, to do or not to do a particular thing, which lawfully may be done or omitted.

**Contracts—Not to Engage in Business—Validity.**

2. It is lawful for a concern selling its business and goodwill, or for an individual selling his interest either in a firm or corporation, to agree that seller will not engage in a specified business and will refrain for a specified time from certain things financially detrimental to the buyer.

**Contracts—Past Consideration.**

3. Plaintiffs having irrevocably agreed to buy stock, subsequent agreement not to engage in competing business "in consideration of your purchase of the interests of ourselves in the company" was not enforceable.

**Evidence—Complete Contract—Varying by Parol.**

4. Contract for sale of stock, opening with statement, made by seller and accepted by plaintiffs, "This confirms our verbal agreement, which we now understand as follows," *held* to evidence a completed transaction, which could not be varied by parol, in view of Section 713, L. O. L.

**Corporations—Contract of Stockholder—Liability of Corporation.**

5. If one operating for himself makes a covenant in his own name not to compete with his successors, it does not bind the corporation of which he is a stockholder.

---

*On the question of validity of agreement in restraint of trade ancillary to the sale of a business or profession, as affected by its territorial scope, see notes in 24 L. R. A. (N. S.) 913; L. R. A. 1916C, 626.

On contract by selling shareholder not to engage in business in competition with the corporation, see note in 9 L. R. A. (N. S.) 506.

REPORTER.

Injunction—Enforcement of Negative Covenant.

6. Injunction is the proper remedy to enforce negative covenant not to engage in competing business.

Specific Performance—Indefinite Contract.

7. The contract itself must be specific enough to serve as the foundation of a specific decree to authorize specific performance.

   [As to specific performance of contracts, for the sale of corporate stock, see note in 135 Am. St. Rep. 689.]

Specific Performance—Indefinite Contract.

8. Agreement not to enter into any organization in the same line of business in certain territory whereby interest of company would be interfered with *held* too indefinite to warrant specific performance.

From Multnomah: EDWIN V. LITTLEFIELD, Judge.

Department 1.

The people and concerns involved in this litigation are here named: Coast Culvert & Flume Company was a corporation engaged in the manufacture and sale of iron culverts and flumes; Multnomah Iron Works was another corporation engaged in the manufacture of machinery and tools; Beall & Company, afterwards called Hodson-Feenaughty Company, was originally a concern engaged in the jobbing business and particularly in selling the products of the Coast Culvert & Flume Company; John S. Beall and his brother, E. H. Beall, held the controlling interest in the stock of Beall & Company, amounting to 343 shares out of a total capital stock of 500 shares. On January 17, 1914, John S. Beall and E. H. Beall made the following proposition to the plaintiffs, which for convenience, with the plaintiffs' subscribed acceptance thereof, will be called exhibit "A":

"Messrs. W. O. Feenaughty, C. W. Hodson and E. L. Thompson,

"Gentlemen: This confirms our verbal agreement with you, which we now understand to be as follows; and to more distinctly designate the various interests, we will call the existing organization of Beall & Co., Beall No. 3 and the new purchasers of Beall & Co., Beall No. 4:

"We will sell you our interests in Beall & Co. No. 3, consisting of 243 shares of stock of the par value of $100.00 per share, held by J. S. Beall, and 100 shares of stock held by E. H. Beall, for par, plus 25% as a premium; the capital stock being $50,000.00; consisting in assets of merchandise, freights paid on consigned goods, furniture and fixtures. Any shortage that may appear between the inventory values and the capital stock, will be made up in the transfer of guaranteed accounts receivable from Beall & Co. No. 3 to Beall & Co. No. 4.

"It is further understood that $12,500.00 of the amount that Beal & Co. No. 4 pay as a premium to Beall & Co. No. 3, for this stock, is to be applied by Beall & Co. No. 4 on $23,000.00 indebtedness of Beall & Co. No. 3 held by Ladd & Tilton Bank, Beall & Co. No. 3 to pay the balance of this indebtedness of approximately $10,500.00 to Ladd & Tilton.

"The payment of the above named $34,400.00 to be made to ourselves shall consist of—
$20,000.00 in Cash from C. W. Hodson,
5,000.00 in Securities evidenced by payment from W. O. Feenaughty,
9,300.00 in Securities evidenced by contracts from E. L. Thompson.

"It is expressly understood that the prices used in making up the inventory of merchandise, furniture and fixtures, etc., are to be the same prices we used in last inventory of Beall & Co. No. 3.

"It is also understood that if this proposal is accepted by you, the transfer of this business shall be made as of date January 19th, 1914.

"John S. Beall.
"E. H. Beall.

"We accept the above as satisfactory:
"W. O. Feenaughty.
"C. W. Hodson.
"E. L. Thompson."

On the twenty-sixth day of the same month John S. Beall and E. H. Beall signed the following writing:

"Messrs. W. O. Feenaughty, C. W. Hodson and E. L. Thompson,

"Gentlemen: In consideration of your purchase of the interests of ourselves in the company known as Beall & Co., engaged in the road-making machinery and contractors' machinery and supply business, we hereby agree to use our best endeavors to personally further the interests of Beall & Co. at any and all times.

"We further agree that we will not enter directly or indirectly into any organization or individual connection in the same line of business in or about Portland or this territory whereby the interests of Beall & Co. will be in any measure interfered with."

It is alleged and admitted that at all the times mentioned in the complaint John S. Beall was the president and general manager of the defendant Coast Culvert & Flume Company and owns and controls a majority of the stock thereof, and that he was a stockholder in and president of the Multnomah Iron Works. With their previous holdings, the sale of the stock in Beall & Company to the plaintiffs gave them the ownership of all the shares in that concern, and it is alleged they still own them. After reciting these matters, pleading the sale of the stock according to legal effect and setting out in full the writing called exhibit "C" and appending to the complaint a copy thereof, the plaintiffs declare their grievance in this language:

"That the said John S. Beall, in violation of his said agreement, and with intent to injure and destroy the business of the Hodson-Feenaughty Company, owned and controlled exclusively by plaintiffs herein, on or about the —— day of ——, 1916, acting through the defendant Coast Culvert & Flume Company, as its President and Manager, entered into a contract with defendant Multnomah Iron Works, of which corporation defendant John S. Beall is a stockholder and

91 Or.—42

President, for the manufacture and construction of a road tool, designated as the 'Jarmin Road Fixer,' which when constructed was designed for the smoothing and repair of roads and highways, and which said road tool will come in active competition with road tools and implements and apparatus carried and sold by the said Hodson-Feenaughty Company, and which said road tools are now being manufactured and some completed, for the said Coast Culvert & Flume Company, by the said Multnomah Iron Works, under said contract.

"That the said defendant John S. Beall, acting through the medium of the Coast Culvert & Flume Company, and as its President and Manager, has entered into contracts for the sale of said road tool, the 'Jarmin Road Fixer,' to customers of the Hodson-Feenaughty Company, within its district, which comprises the states of Oregon, Washington and Idaho; and has entered into a contract with the County of Gilliam, in the State of Oregon, for the sale of one 'Jarmin Road Fixer' machine; and has entered into a contract with the County of Sherman, within the State of Oregon, for the sale of five 'Jarmin Road Fixer' machines, all of which said machines are designed for road repair, and come in competition with the mechanical devices sold by said Hodson-Feenaughty Company, which accomplish the same purpose for which the said 'Jarmin Road Fixer' machine is designed; and the said defendant John S. Beall, acting through the said defendant Coast Culvert & Flume Company, is threatening to, and unless restrained by your Honorable Court will, manufacture or cause to be manufactured, other 'Jarmin Road Fixers,' and will offer the same for sale and sell the same in the territory heretofore, on the 17th day of January, 1914, sold to the said Beall & Company, to the irreparable damage to plaintiffs herein."

In addition thereto they count upon a similar action by Beall in respect to metallic road signs.

A general demurrer by John S. Beall to the complaint and on the ground that "neither Beall & Com-

pany nor E. H. Beall was made a party" was over-ruled. A similar demurrer by the Coast Culvert & Flume Company and the Multnomah Iron Works, and for the further reason that neither of them was party to the contract declared upon and that it is too vague and indefinite to authorize a court to grant equitable relief in the premises, was also overruled. After-wards E. H. Beall was made party by interlining his name, but the allegations of the complaint were not changed in any respect. His demurrer similar to those already noted was also denied. The corporate defendants answered, defending principally upon the ground that they were not parties to the transaction and were not bound by the action of John S. Beall, although he is one of their stockholders. As a com-mon feature the answers point out that the writing upon which the plaintiffs count was executed after the sale of the Beall stock and as a separate transaction and that the purchase of those shares constituted a "past consideration," making the instrument ineffec-tual for want of consideration. They further contend that the "Jarmin Road Fixer" is a contrivance the sale of which does not interfere with any of the busi-ness of the corporation Beall & Company or of its successor, Hodson-Feenaughty Company. The an-swers of the Coast Culvert & Flume Company and Multnomah Iron Works contain an additional feature to the effect that besides John S. Beall there are other stockholders in those concerns, who never had any knowledge or notice of the alleged agreement upon which the plaintiffs rely in this suit. It is said by the Multnomah Iron Works also that John S. Beall is the owner of a minority of its stock but is not the manager or in any manner in control of its business.

In the reply issue was joined upon certain matters of the answers. The result of the hearing by the

court was a decree enjoining the two Bealls from interfering in any manner with the customers or trade of the Hodson-Feenaughty Company or from soliciting or selling, or attempting to sell or causing to be sold any of the road tools, road signs, road machinery or other articles or machinery which were kept or sold by Beall & Company either directly or as agents for manufacturers or others on or prior to January 17, 1914, in the states of Oregon, Washington and Idaho, and from acting as selling agent for any other person, firm or corporation for the sale of such merchandise as was kept and offered for sale by Beall & Company at the date of the contract. The decree further restrained the Bealls from acting as selling agents for the Multnomah Iron Works and from causing that concern to manufacture any of the "Jarmin Road Fixers" or road signs, or any other tools, implements or devices which would come into competition with any like articles sold by Beall & Company on or prior to January 17, 1914. A similar decree was entered against the Coast Culvert & Flume Company, except that it was allowed to sell such articles as it manufactured on or prior to the date mentioned. The court also gave a decree in favor of the plaintiffs against John S. Beall and the Coast Culvert & Flume Company in the sum of $500 as damages, together with costs and disbursements in favor of the plaintiffs against John S. Beall, E. H. Beall and the Coast Culvert & Flume Company. All of the defendants appeal.        REVERSED AND DISMISSED.

For appellant there was a brief over the names of *Mr. J. P. Winter* and *Mr. Roscoe R. Johnson,* with an oral argument by *Mr. Winter.*

For respondent there was a brief and an oral argument by *Mr. John H. Hall.*

BURNETT, J.—1. A contract may be defined as an agreement between two or more parties competent for that purpose, upon a sufficient consideration, to do or not to do a particular thing which lawfully may be done or omitted. In this suit there are three questions to be considered: First, whether it was lawful to make such a contract as the plaintiffs say was made; second, whether there was actually a contract; and third, if made, whether it was sufficiently certain to enable a court to decree specific performance thereof. While the common-law rule was that a contract in restraint of trade was unlawful, modern conditions have led the courts by great weight of authority to lay down the rule that it is proper for parties selling an established business or transferring their stock in a corporation engaged in business, as part of the transaction to agree that the seller will not engage in like business in any capacity in a place and for a time designated. It is in the nature of a protection of the purchaser in the enjoyment of what he had bought and is not to be countenanced unless in connection with the sale of a business or of property employed in trade.

2. In *Barrows* v. *McMurtry Co.,* 54 Colo. 432 (131 Pac. 430), in one contract joined in by a stockholder, his corporation and the purchaser of the entire stock in trade of the concern and the goodwill of it and the stockholder and his brother and sister, he covenanted not to engage either directly or indirectly in any business in the State of Colorado which carried, handled or sold paints, varnishes or glass, or to accept employment with any house or business which handled such merchandise or to invest any money in any concern in that state carrying on a like business. The court

sustained the contract and by injunction forbade his violation of it. In *Kramer* v. *Old,* 119 N. C. 1 (25 S. E. 813, 56 Am. St. Rep. 650, 34 L. R. A. 389), it was held substantially that if several persons engaged in a business at a certain place sell it and agree not to engage thereafter in the same business in that place, it is a violation of the contract for any one of them to assist in the organization and management of a corporation thereafter formed to compete with the purchaser in such business. It was also held in that case that although the contract is binding between the parties to it, it does not impair the right of defendants who were not parties to the contract. What was enjoined was the organization of a new corporation by the parties to the original agreement, as a device for its infraction: See, also, *Up-River Ice Co.* v. *Denler,* 114 Mich. 296 (72 N. W. 157, 68 Am. St. Rep. 480); *Kronschnabel-Smith Co.* v. *Kronschnabel,* 87 Minn. 230 (91 N. W. 892); *Kradwell* v. *Thiesen,* 131 Wis. 97 (111 N. W. 233); *Harris* v. *Theus,* 149 Ala. 133 (43 South. 131, 123 Am. St. Rep. 17, 10 L. R. A. (N. S.) 204); *Fleckenstein Brothers Co.* v. *Fleckenstein,* 76 N. J. Law, 613 (71 Atl. 265, 24 L. R. A. (N. S.) 913); *Bradford* v. *Montgomery Furniture Co.,* 115 Tenn. 610 (92 S. W. 1104, 9 L. R. A. (N. S.) 979); *Buckhout* v. *Witwer,* 157 Mich. 406 (122 N. W. 184, 23 L. R. A. (N. S.) 506); *Siegel* v. *Marcus,* 18 N. D. 214 (119 N. W. 358, 20 L. R. A. (N. S.) 769); *Hall Mfg. Co.* v. *Western Steel & Iron Works,* 227 Fed. 588 (142 C. C. A. 220; L. R. A. 1916C, 620). We conclude, therefore, that it is lawful for a concern selling its business and goodwill or for an individual selling his interest either in a firm or corporation, to agree that the seller will not engage in a specified business and will refrain for a specified time from certain things financially detrimental to the buyer.

3. The next question to be determined is whether the writing of January 26, 1914, addressed to the plaintiffs and signed by the Bealls, constitutes a contract. The consideration recited is "your purchase of the interest of ourselves in the company known as Beall & Company." The record shows that the sale of the stock of the Bealls in that concern was accomplished by the writing executed on January 17, 1914, declaring that the transfer should be made as of the next day but one. Consequently, the sale of the stock was an accomplished fact at least a week before the date of the writing upon which the plaintiffs were relying. It was a past consideration. In that respect it was inert. It could not support any subsequent stipulation. The plaintiffs had irrevocably agreed to buy that stock and to pay for it. What they had already covenanted to perform cannot operate as a consideration for additional stipulation. We had occasion to consider this point in *Hoskins* v. *Powder Land & Irr. Co.,* 90 Or. 217 (176 Pac. 124), where some precedents are noted.

4. The plaintiffs, however, contend that before the execution of exhibit "A" transferring the stock and during the negotiations which led up to the execution of that instrument, the Bealls stated in effect that they were anxious to retire from business and would stay out, and the contention of the plaintiffs is that the writing of a week later is part of the same transaction and must be read in connection with the instrument actually transferring the stock, and likewise, that the previous conversation supports that theory.

Section 713, L. O. L., reads thus:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or

successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 717, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

In *Sund* v. *Flagg*, 86 Or. 289 (168 Pac. 300), where consideration of this statute was involved, the plaintiffs sought to recover compensation for their services in grading for a railroad under employment by the defendant. Work was begun under an oral arrangement contemplating a later writing embodying the stipulation of the parties. The contention of the defendant was that it was agreed orally that the estimate of the chief engineer should be binding upon the plaintiffs and that it would control the subsequent writing. Mr. Justice HARRIS, speaking for the court, on that point used this language:

"It may be true that contracts with stationmen usually contain the stipulation contended for by the defendant but the answer is that this instrument does not contain such a stipulation. The parties chose to reduce their oral agreement to writing and upon inspection the document appears to contain a complete contract. The prior oral agreement made in September, 1912, may have included the stipulation that the parties would be bound by the estimates of the chief engineer; but if the oral agreement did embrace such a stipulation the parties left it out when they reduced the agreement to writing and since the writing now appears to contain a complete contract, the party

claiming to be prejudiced is without remedy in this proceeding'': Citing *Vogt* v. *Schienebeck,* 122 Wis. 491 (100 N. W. 820, 106 Am. St. Rep. 989, 2 Ann. Cas. 814, 67 L. R. A. 756).

The instrument contracting for the sale of the stock opens with this statement made by the Bealls and accepted by the plaintiffs: ''This confirms our verbal agreement with you which we now understand to be as follows,'' the matter following containing the offer to sell and the terms thereof. Over their own signatures the plaintiffs declared: ''We accept the above as satisfactory.''

There is no pretense in this suit that any mistake was made in the execution of this document or that the plaintiffs were induced by the fraud of the Bealls to consent to it. It evidenced a completed transaction. It cannot be varied by parol. It was a past consideration giving no vitality to the document upon which the plaintiffs here rely. On that account they can claim nothing by virtue of it.

5. The corporate defendants cannot be bound by the stipulations of an instrument to which they were not parties. In *Hall Mfg. Co.* v. *Western Steel & Iron Works,* 227 Fed. 588 (142 C. C. A. 220, L. R. A. 1916C, 620), the court said:

''If any stockholder or officer is skilled in any profession or art, he is not restrained from exercising his skill by the corporation's covenant.''

The converse is equally true that if a stockholder operating for himself makes a covenant in his own name, it does not bind a corporation of which he may be a member. If it were held that a single stockholder by his individual act or stipulation could bind a corporation of which he was a member, without the concern's being a party to that agreement, it would be in

the power of the holder of a majority of the stock or even of a minority, to prejudice other holders of stock who had no notice of it. As against his corporation, a stockholder cannot contract with parties who have no interest in the concern to operate as a member thereof in any manner inimical to it. He owes his loyalty to the institution and no person not interested in it can lawfully seduce him from his duty. It is his business to maintain a position where he can exercise his fair, honest judgment in the interests of the corporation of which he is a member: 15 Am. & Eng. Cyc. L. 948. In 3 Clark & Marshall on Private Corporations, Section 657, the authors use this language:

"But any agreement by or between a part of the stockholders of a corporation, particularly where they own the majority of the stock, by which they bind themselves to vote for certain officers or directors, or for themselves, at a stated salary, or for certain measures, without regard to what may be to the best interests of the company, or otherwise place their own interests in opposition to the interests of the company, since it tends to a perpetration of a fraud upon minority stockholders, is contrary to public policy, and illegal."

The parties to the paper of January 26, 1914, might lawfully contract affecting their own interests, but without its consent they could not restrict the activities of the Coast Culvert & Flume Company or of the Multnomah Iron Works.

6. By means of injunction the plaintiffs seek to enforce specific performance of the negative language in exhibit "C."

"That we will not enter directly or indirectly into any organization or individual connection in the same line of business in or about Portland or this territory whereby the interests of Beall & Company will be in any measure interfered with."

That injunction is a proper remedy to enforce such negative covenants is laid down in *Harris* v. *Theus,* 149 Ala. 133 (43 South. 131, 123 Am. St. Rep. 17, 10 L. R. A. (N. S.) 204).

7. In a suit for specific performance, the contract itself must be specific enough to serve as the foundation of a specific decree. The court cannot be wiser than the parties themselves or go more into detail than they have marked out for their conduct, or make a new contract for them. In every case that has come under our observation where the court enjoined parties from transacting a similar business, the agreement was so specific that no one could mistake what was within the contemplation of the parties. For instance, in *Up-River Ice Co.* v. *Denler,* 114 Mich. 296 (72 N. W. 157, 68 Am. St. Rep. 480), the man who sold his stock agreed not to engage in the ice business in Port Huron or adjacent thereto at any time, either as principal, agent or employee. *Kradwell* v. *Thiesen,* 131 Wis. 97 (111 N. W. 233), was a case wherein the defendant bound himself in writing with the Kradwells that for and during a period of five years from and after June 23, 1903, he would not, either directly or indirectly, in his own name or as stockholder or as agent, engage in the business of selling drugs either at wholesale or retail, or conduct a drug-store, within the corporate limits of Racine. On the other hand, in *Hoff* v. *Leneerman,* 143 Ill. App. 170, the agreement by the defendant not to run a corn-sheller ''in the territory contiguous to Guthrie, Illinois,'' was held to be too indefinite to justify a decree for specific performance. In *Brehm* v. *Sperry,* 92 Md. 378 (48 Atl. 368), a contract ''to give their best efforts'' to the consummation of a certain scheme was likewise held to be too indefinite for enforcement by decree. In *Burke* v. *Mead,* 159 Ind. 252

(64 N. E. 880), the rule laid down by Mr. Justice Washington in *Colson* v. *Thompson,* 2 Wheat. 336, 340 (4 L. Ed. 253), was approved, reading thus:

"The contract which is sought to be specifically executed, ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

See, also, *Buck* v. *Smith,* 29 Mich. 166 (18 Am. Rep. 84), and *Blanchard* v. *Detroit etc. R. R. Co.,* 31 Mich. 43 (18 Am. Rep. 142).

8. It is uncertain from the language of the writing what the parties considered at the time to be an interference with the interests of Beall & Company. On this ground, likewise, in our judgment, the contract is not a good foundation for enforcement of specific performance. The decree of the Circuit Court is reversed and the suit dismissed.

Reversed and Dismissed. Rehearing Denied.

McBride, C. J., and Benson and Harris, JJ., concur.