Argued at Pendleton October 30, reversed November 26, 1918.

## HOSKINS v. POWDER LAND & IRR. CO.

(176 Pac. 124.)

**Contracts—Modification—Consideration.**

1. Promise by a contractor, threatening to abandon his contract, to continue with the contract, was not considered for a promise to pay additional compensation.

**Contracts—Extra Work—Conditions.**

2. A contractor cannot recover for extra work done under a contract providing that no extra work should be done except upon written directions given by a certain person, unless such written directions were given, or it is shown that such condition was waived.

**Contracts—Performance—Decision of Engineer.**

3. Where contract provides that the decision of a certain engineer as to the amount of dirt in a grade should be conclusive between the parties, a decision of such engineer can only be impeached for fraud or on other equitable grounds.

**Evidence—Opinion—Weight.**

4. Testimony of an engineer, who went over the ground before a grade was put in, as to the amount of dirt there was in the grade when completed, must prevail over that of another engineer, who did not go upon the ground until after the completion of the grade.

[As to conclusiveness of decision of architect or engineer under working contract, see note in **Ann. Cas. 1913A, 180.**]

**Contracts—Necessity of Performance—Losses.**

5. When one agrees to perform an undertaking he must do so, although it entails a loss upon him.

**Mechanics' Liens—Sufficiency of Claim and Complaint.**

6. A claim of lien for extra material and labor, and complaint, in an action to enforce a lien, must show that the material and labor was furnished for the structure in question.

**Mechanics' Liens—Extra Work.**

7. Extra work done by a contractor on a dam, consisting of clearing out borrow-pits, and work on a county road a mile from the dam, cannot be made a lien on the dam.

From Baker: GUSTAV ANDERSEN, Judge.

In Banc.

By his second amended complaint the plaintiff seeks to foreclose a lien for labor, services and materials furnished for and used in the construction, alteration and repair of a dam and reservoir for the defendants. It is said that by the original contract the work was

to be completed on or before November 1, 1916. The agreement was made in the name of W. A. Steward, but the complaint avers that it was so made for the benefit of the defendant company and its trustee, J. A. Almirall. After the general averment concerning the execution of the instrument as before indicated, the complaint under consideration contains this allegation:

"That on or about the 5th day of September, 1916, the plaintiff and said W. A. Steward as agent for the defendant Powder Land and Irrigation Company and J. A. Almirall, Trustee, entered into an oral agreement modifying said written agreement, in this: The said Steward as such agent agreed to and with the plaintiff to waive the time limit fixed in said written contract providing for the completion of said contract on or before the first day of November, 1916, as might be necessary for the completion of said dam and reservoir, provided that the plaintiff would complete and finish said dam and reservoir as soon as possible, and without unnecessary delay, and that said W. A. Steward as such agent further agreed to and with plaintiff on or about the 5th day of September, 1916, that after said date, he would furnish at his own expense all powder, caps and fuse and pay for all labor from and after said last-named date necessary for clearing and grubbing of the borrow-pits until said reservoir and dam was fully finished and completed, plus ten per cent for all such labor, and the plaintiff thereupon agreed to and with said Steward, agent for defendant Powder Land and Irrigation Company, and J. A. Almirall, Trustee, to proceed with the construction of said reservoir and dam and to finish and complete the same as soon as possible, and without unnecessary delay.

"That said written contract aforesaid was further modified in this: That from time to time during the progress of work and construction on said reservoir and dam, between the first day of July, 1916, and the 9th day of November, 1916, the plaintiff at the special instance and request of the said W. A. Steward, agent

as aforesaid, performed extra work and furnished extra material in the construction, alteration and repair of said dam and reservoir not contemplated by or included within the terms and conditions of said written contract and that the defendants undertook, promised and agreed to pay the plaintiff therefor."

The plaintiff avers as a conclusion that the lump sum of $15,493.01 was the contract and reasonable price for the work performed and the material furnished under the written stipulation and the alleged modifications thereof, and that no part thereof has been paid to the plaintiff except $12,300.35, leaving a balance of $3,192.66, for which with $500 as attorneys' fees, $5 for preparing the lien and the further sum of $2 for recording the same, the plaintiff prays decree and foreclosure of the lien.

A general demurrer to the complaint under consideration was overruled by the court, whereupon the defendants answered, denying the whole complaint, except the corporate existence of the company and except as stated in the new matter of the answer. In substance, the first affirmative defense is that the contract was made between the plaintiff and W. A. Steward personally and not as the agent of the defendant company or anyone; that the agreement was that the work should be completed on or before November 1, 1916, time being made the essence of the contract, and that about October 9th of that year the plaintiff abandoned the work, notifying Steward in writing to that effect, whereupon the latter called in the surety of the plaintiff, which took up the work and completed it on October 31, 1916, while the notice of lien was not recorded until more than sixty days thereafter, viz., January 8, 1917.

The second defense is in substance a rehearsal of the terms of the contract, hereinafter more fully

noticed, which the defendants claim estop the plaintiff from alleging the matter already quoted from the amended complaint. For a third ground of opposition to the complaint the defendants plead that the plaintiff is estopped from enforcing a lien, because he abandoned the contract, by reason of which he should not be permitted to maintain any action or suit thereon. Lastly, the defendants plead that on December 9, 1916, the plaintiff agreed with Steward, in whose name the contract was made, that if the latter would pay a debt owing by the plaintiff to the Basche-Sage Hardware Company, amounting to $1,196.16, the plaintiff would accept the same as full and final settlement of all sums and accounts due him for labor performed and material furnished upon the dam in question, either by the terms of the written contract or otherwise, which offer was accepted by Steward, who paid to the Hardware Company the amount mentioned, as a full settlement and satisfaction of the plaintiff's demand on account of the transaction about the dam.

The new matter in the answer was denied by the reply. The trial before the Circuit Court resulted in a decree for the plaintiff, from which the defendants appeal.        REVERSED.

For appellants there was a brief by *Messrs. Clifford & Correll,* with an oral argument by *Mr. Morton D. Clifford.*

For respondent there was a brief with oral arguments by *Mr. John L. Rand* and *Mr. William Packwood, Jr.*

BURNETT, J.—At the hearing before the Circuit Court it was agreed that the following items of the plaintiff's claim were the only ones disputed:

| | |
|---|---|
| Concrete piers, 4.86 cubic yards, at $15.60 per yard .............................. | $75.25 |
| Excavation and placing earth in the embankment for reservoir dam, 32,691 cubic yards, at 35¢ per yard................. | 11,441.85 |
| Work and labor for August, 1916, in addition to above ........................... | 123.44 |

The defendants admit $121.95 of this last item, challenging thereof only $1.49, but dispute the following:

| | |
|---|---|
| For work, labor and material furnished for September, 1916, in addition to the above . | $899.81 |
| Work and labor for October, 1916, in addition to the above ........................ | 460.32 |
| Work and labor and material furnished for November, 1916, in addition to the above | 416.75 |

1, 2. We note that the complaint attempts to plead modification of the contract in three respects: 1. The waiver of the time in which the work should be completed. 2. That on or about September 5, 1916, the agent of the defendants in whose name the contract was made was to furnish powder, caps and fuse and pay for clearing and grubbing the borrow-pits, plus 10 per cent of the cost. 3. That during the progress of the undertaking at the special instance and request of W. A. Steward, the agent of the defendants, the plaintiff performed extra work and furnished extra material in the construction of the dam and reservoir not included in the terms of the written contract, for which the defendants agreed to pay the plaintiff. Taking these in inverse order, we discern from the contract, which was admitted in evidence without objection, that:

"No extra work shall be done without written orders from W. A. Steward or his engineer. Extra work or material of a character not provided for in the specifications if ordered in writing by the engineer,

will be paid for at actual necessary cost, as determined by the engineer, plus 10 per cent for profit, superintendence, and general expenses. The cost of extra work shall include all materials, labor and fuel furnished by the contractor; but shall not include use of tools or machinery, office expenses, general superintendence, or other general expenses. Demand for payment must be made in writing by the contractor promptly upon the completion of the extra work or furnishing of the extra material. The account including the same must be accompanied by the certificate of the engineer stating that such work has been satisfactorily performed or such material furnished, and stating the amount to be allowed therefor. The contractor shall, when requested by the engineer, furnish itemized statements of the cost of the work ordered, and give the engineer access to accounts, bills, and vouchers relating thereto.''

If the work mentioned in the third modification, as pleaded, related to the erection of the dam in any way, it was already provided for in the excerpt just quoted from the written contract, so that the allegation does not amount to a modification. As to the expense for powder, caps and the clearing and grubbing of the borrow-pits, the consideration for the alleged agreement of Steward to pay for the same as averred in the complaint is that:

''The plaintiff thereupon agreed to and with said Steward, agent for defendant * * to proceed with the construction of the said reservoir and dam and to finish and complete the same as soon as possible, and without unnecessary delay.''

Recalling that at that very time the plaintiff was under contract to finish the identical dam, we read from 13 C. J. 351:

''A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to

which he is already legally entitled, the consideration
is unreal.   Therefore, as a general rule, the perform-
ance of, or promise to perform, an existing legal obli-
gation is not a valid consideration.   This legal obliga-
tion may arise from the law independent of contract,
or it may arise from a subsisting contract.''

After discussion of the obligation at law, the author,
speaking of subsisting contractual obligations, con-
tinues on page 353:

"The promise of a person to carry out a subsisting
contract with the promisee or the performance of such
contractual duty is clearly no consideration, as he is
doing no more than he was already obliged to do, and
hence has sustained no detriment, nor has the other
party to the contract obtained any benefit.   Thus a
promise to pay additional compensation for the per-
formance by the promisee of a contract which the
promisee is already under obligation to the promisor
to perform is without consideration."

See, also, *Nine* v. *Starr*, 8 Or. 49; *Myers* v. *Livesley,*
56 Or. 383, 389 (107 Pac. 476, 108 Pac. 121); *Hillman*
v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124); *Muir*
v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785).

The testimony of the plaintiff in this connection is
in substance that after he had entered upon the per-
formance of the undertaking he saw that he would be
unable to complete the contract except at a loss, and
therefore went to Steward and offered him $1,000 if
the latter would release the plaintiff from the work,
but that Steward declined the offer, whereupon it
was agreed that Steward should pay the plaintiff for
clearing the borrow-pits and the like, as stated, in
consideration of which the plaintiff agreed to complete
the dam.   The reason he avowed for thus approach-
ing Steward was that he was compelled to haul earth
to make the fill of the dam farther than he had

originally supposed. In that respect the admitted contract contains this provision:

"The party of the first part hereby agrees that he has, in person, or by his agent, examined the premises and line of dam on which the work is to be performed, and his knowledge of the conditions surrounding the same is gained from such observations and not from representations of the engineer or the party of the second part."

In the specifications attached to and made a part of the contract and introduced into evidence by the plaintiff appears the following:

"Borrow-pits and classification of material:—The engineer will designate the borrow-pits from which all materials for the fills shall be obtained. The contractor shall strip the borrow-pits to the satisfaction of the engineer and the cost of such stripping shall be included in the price bid for the fill. The classification of the materials from the borrow-pits shall be under the supervision of the engineer who will, at all times, direct at what points it shall be placed on the dam. The price per cubic yard, bid by the contractor, for fill shall include all plowing or loosening in the borrow-pits, loading, hauling, unloading, spreading, wetting and rolling, and no allowance whatever will be made for overhaul. The average length of haul will be approximately one thousand (1,000) feet from the borrow-pits to the dam. All payments for materials placed in the fill shall be on the basis of actual volume measured in the dam after settlement of the fill has ceased."

There is no pretense of stating in the complaint that the plaintiff was induced to execute the contract by reason of any fraud or deceit upon the part of the defendants or their agent. It is plain, therefore, from the authorities and from the evidence of the plaintiff himself that the supplementary agreement as stated in the complaint concerning the clearing and grubbing

of the borrow-pits was without consideration and
hence void.   It is a case of a contractor's refusing to
perform his undertaking except upon condition that
he receive extra remuneration above what he agreed
upon.   As to the items now under consideration, the
plaintiff is confronted with a dilemma.   If the work
of clearing the borrow-pits was part of the original
undertaking, the plaintiff has no right to make an ex-
tra charge for it.   On the other hand, if it was not
connected with the contract, it does not constitute a
lienable item.   Moreover, it is not pretended that any
written directions were given to perform this extra
work, if extra at all, nor was there any attempt to
comply with the quoted excerpt from the contract in
that respect.   Neither is it pleaded that the perform-
ance of this stipulation was waived.   *Apropos* of this
phase of the case, we quote from *Vanderhoof* v. *Shell,*
42 Or. 578, 585 (72 Pac. 126) :

"It is competent for parties to stipulate in a contract
of the nature of the one here in controversy that the
contractor shall procure the certificate of an architect
that the work has been performed or the building com-
pleted in accordance with his undertaking, as a condi-
tion precedent to the payment of any installment or the
amount finally to become due.   Generally speaking, no
action or suit can be maintained therefor against the
owner until the condition is performed or its require-
ments waived.   The contract becomes a law between
the parties in this respect, as they expressly agree that
the amount due for the service shall be established by
the certificate of the architect; and it throws upon the
contractor the burden of producing the particular kind
of evidence required by the mutual stipulations of the
parties concerning it, unless the circumstances are such
* * that the contractor is unable to produce it through
no fault of his.   Were it otherwise the law would take
from the owner the particular kind of protection
against defective and lax performance that he has ex-

90 Or.—15

pressly stipulated for: *Hanley* v. *Walker,* 79 Mich. 607 (45 N. W. 57, 8 L. R. A. 207); *Clarke* v. *Watson,* 18 Com. B. (N. S.) 278; *United States* v. *Robeson,* 34 U. S. (9 Pet.) 319 (9 L. Ed. 142); *Martinsburg & P. R. Co.* v. *March,* 114 U. S. 549 (29 L. Ed. 255, 5 Sup. Ct. Rep. 1035); *Hudson* v. *McCartney,* 33 Wis. 331; *Smith* v. *Brady,* 17 N. Y. 173 (72 Am. Dec. 442); *Michaelis* v. *Wolf,* 136 Ill. 68 (26 N. E. 384). A salutary rule of practice also requires that where there is an excuse, or sufficient reason exists why the contractor has been unable to secure or produce such a certificate—as that it has been waived, or the like—it should be averred in the pleadings, so as to lay a foundation for the admission of the proofs to establish the condition.''

See, also, *Hart* v. *Carsley Mfg. Co.,* 221 Ill. 444 (77 N. E. 897, 112 Am. St. Rep. 189, 5 Ann. Cas. 720), and *Korbly* v. *Loomis,* 172 Ind. 352 (88 N. E. 698, 139 Am. St. Rep. 379, 19 Ann. Cas. 905).

This disposes, adversely to the plaintiff, of the following disputed items in his claim of lien:

| | |
|---|---:|
| Deduction from work for July and August..$ | 1.49 |
| Work for September...................... | 899.81 |
| Work for October........................ | 460.32 |
| Work for November...................... | 416.75 |
| | $1,778.37 |

3. It remains to consider the dispute between the parties as to the item for filling the embankment. The plaintiff testified that the engineer in charge of the work computed the amount of the fill as 27,441 cubic yards, while the claim is for 32,691 cubic yards. We read in the contract as follows:

''To prevent all disputes and misunderstandings in relation to any of the stipulations contained in this agreement or performance by either of said parties, the said engineer shall be and hereby is made umpire to decide all controversies arising or growing out of this contract and his decision on any point or matter touch-

ing this agreement shall be final and conclusive between the parties hereto.   And it is further agreed between said parties that wherever the word 'engineer' is used it shall be taken and construed to mean chief engineer employed by said second party."

Further, in the specifications, we find:

"Where the word 'engineer' is used in the general conditions or detail specifications, or in the contract, it shall be and is mutually understood to refer to the engineer employed by W. A. Steward to supervise the construction of all or any part of the work contemplated in these specifications.   The engineer will give the locations and the grades for the work, and no work depending on such locations and grades will be commenced until these have been established, and the contractor shall provide such materials and give such assistance as may be required by the engineer.   Upon all questions concerning the execution of the work, the classification of the material in accordance with the specifications, and the determination of costs, the decision of said engineer shall be binding on both parties."

As said by Mr. Justice EAKIN in *Williams* v. *Mt. Hood Ry. & P. Co.*, 57 Or. 251, 257 (110 Pac. 490, 492, Ann. Cas. 1913A, 177):

"Parties to a contract may stipulate that the estimate of the work done, and the amount due under the contract shall be made by a third party, and shall be final and conclusive.   There are a multitude of cases so holding."

In a copious note to *Mercantile Trust Co.* v. *Hensey*, 205 U. S. 298 (27 Sup. Ct. Rep. 535, 51 L. Ed. 811, 10 Ann. Cas. 572), a wealth of precedent is collated on this point.   Of course the decision of the engineer could be impeached for fraud or on other equitable grounds, but there is no question of that kind embodied in the pleadings in the instant case.

4. It is true that the plaintiff produces the testimony of an engineer who undertook to measure the amount of

the fill in the dam after the same had been constructed. The witness, however, admitted that it was impossible to make an accurate measurement under such circumstances, the reason being that in filling any irregular space where there are projections or depressions of unknown dimensions, no accurate measurement can be accomplished after they are covered up by the fill. The engineer of the defendants who had charge of the work had made his measurements and cross-sections before any fill was begun, and he consequently had reliable data from which to compute the yardage in the dam. Moreover, as provided by the contract, his adjustment of the matter was made conclusive by the stipulation of the parties. Both on account of the agreement on that subject and of his better opportunity to know the accuracy of his computation, the testimony of the defendants' engineer in charge of the work must be held to prevail over that of the plaintiff's witness, who went upon the ground after the completion of the embankment. The difference between the two amounts is 5,250 cubic yards, which at the contract price of 35 cents per cubic yard amounts to $1,837.50, which must be deducted from the plaintiff's claim. This makes a total deduction, counting the previous items mentioned, of $3,615.87, which amounts to more than the balance of $3,192.66 claimed by the plaintiff. This renders it unnecessary to consider the disputed item concerning the concrete piers, further than to say that the engineer's measurement makes that item considerably less than the amount claimed by the plaintiff.

5, 6. In consideration of the testimony it gives one pause on finding the plaintiff offering $1,000 to be released from the contract and afterwards appearing in court claiming a balance due for extra work in the sum of upwards of $3,000. The law is that when one agrees to perform an undertaking, he must do so, although it

entails a loss upon him, and it will not be permitted
that he disregard the protection thrown about the
other parties respecting new or extra work and pad
his claim until he can wipe out his anticipated loss.
The claim of lien and the complaint upon which it is
based is insufficient in respect to the disputed items
for extra labor in that it does not show that it was for
work performed upon the structure in question, under
the contract or the modifications thereof.

7. Again, the testimony of the plaintiff was that the
greater part was for clearing the borrow-pits, which
we have shown was not properly charged against the
defendants, and some of it was for work on a county
road, part of which was a mile or more from the dam.
The statute giving a lien contemplates that the labor
and materials must be used in the erection upon which
the lien is claimed. The items last mentioned do not,
in our judgment, come within that category even on
the merits of this case, which is for the foreclosure of
such a lien. Whatever claims the plaintiff may have
against the defendants cannot be worked out in this
proceeding, unless it is shown that they are for lien-
able items.

The complaint did state sufficient to support part
of the claim and hence the general demurrer was prop-
erly overruled, but the principle was not waived when
it came to the proof of the plaintiff's allegations. It
is unnecessary to discuss the other questions raised by
the answer. The result is that the decree of the Cir-
cuit Court is reversed and the suit is dismissed.

REVERSED AND SUIT DISMISSED.

HARRIS, J., absent.