Motion to dismiss appeal denied July 18, 1922, argued April 9, reversed June 24, rehearing denied November 18, 1924.

# S. W. LOVELL ET AL. *v.* WM. H. POTTS ET AL.

(207 Pac. 1006; 226 Pac. 1111.)

**Appeal and Error—Trial Judge, Disqualified Because of Prejudice, Authorized to Extend Time for Filing of Transcript.**

1. A judge, who had been disqualified to try a case, under Sections 45—1 to 45—4, Or. L., providing that no judge shall sit to hear or try any suit where he is prejudiced against a party or attorney, had jurisdiction to grant an order extending time for filing of the transcript on appeal under Section 548, as the purpose of this disqualification statute is to prevent a prejudiced judge from sitting at the trial, and not to affect a case on appeal, especially since, under Section 554, paragraph 2, a justice of the Supreme Court could have made such an order.

## ON THE MERITS.

**Contracts—Defendant Held Within General Rule Regulating Signing of Contract Without Reading It.**

2. Where defendant claimed that fraud was practiced on him in execution of contract he signed when hurrying to catch train, but prior contract had been submitted containing provisions not agreed to and he had refused to sign, he was put on guard as to signing the later writing without first reading it.

**Contracts—Conclusiveness of Architect's Certificate as Bar to Claim for Extra Work Held Question for Jury.**

3. In action by owner for alleged breach of contract for excavating basement, where there was issue for jury as to completion of contract and compensation for extra work, architect's certificate was not conclusive as to alleged abandonment constituting bar to contractor's claim for extra services, and such question should have been submitted to jury.

**Evidence—Fact of Suretyship of Party to Contract Shown by Parol.**

4. When parties to contract know that one of the parties thereto is surety, such fact may be shown by parol.

See 9 C. J., pp. 773, 899; 13 C. J., p. 370; 22 C. J., p. 1232.

From Clatsop: J. U. CAMPBELL, Judge.

In Banc.

This is a motion to dismiss appeal and affirm judgment of the lower court. For grounds of motion, it is averred:

''That the judgment in the above entitled court and
cause was entered on July 14, 1921; that the notice
of appeal was served and filed September 7, 1921;
that the undertaking on appeal was served and filed
September 15, 1921; that defendants' and appellants'
time in which to file their transcript on appeal in the
Supreme Court expired on the 20th day of November,
1921; that previous thereto, and on June 25, 1921, a
motion was filed by W. H. Potts, one of the defend-
ants, supported by his affidavit, alleging prejudice on
the part of Honorable J. A. Eakin, Judge of the
Circuit Court for Clatsop County, State of Oregon,
and that thereafter the Honorable J. A. Eakin, Judge,
as aforesaid, invited and requested the Honorable
J. U. Campbell, Judge of the Fifth Judicial District
of the State of Oregon, to hear and sit at the trial of
the above entitled cause, and that said Honorable
J. U. Campbell did sit and was the judge at the trial
of the above entitled cause.

''That on October 15, 1921, an order was made,
signed by J. A. Eakin, Judge, attempting to extend
the time within which to file appellants' transcript on
appeal in the above entitled court from October 20,
1921, to December 1, 1921; that on November 28,
1921, based upon a motion, the Honorable J. A. Eakin
made a further order attempting to extend the time
within which to file the transcript on appeal in the
above entitled cause from December 1, 1921, to Feb-
ruary 1, 1922; that the transcript on appeal in the
above entitled cause was filed in the above entitled
court on January 25, 1922, containing a bill of
exceptions settled and certified to by the Honorable
J. U. Campbell, Judge.''

One of the defendants having filed an affidavit of
prejudice, as prescribed by Section 160, General Laws
of 1919 (Section 45—1 to 45—4, incl., Or. L.), based
thereon the defendants urged that Hon. J. A. Eakin,
Judge of the Circuit Court of the State of Oregon in
and for Clatsop County, was prejudiced and by rea-

son thereof was disqualified to act in the trial. The effect of this affidavit of prejudice was to remove from Judge Eakin all jurisdiction to try or hear the cause. The record before us discloses that Judge Eakin obeyed the command of the statute and did not "sit to hear or try" the cause, but that he called in Judge Campbell, who did "sit to hear and try" the action.

After presiding at the trial Judge Campbell returned home. He certified to the bill of exceptions. The parties who made the affidavit of prejudice sought and obtained from the Circuit Court of the State of Oregon in and for Clatsop County, Hon. J. A. Eakin, Judge, presiding, an order of extension of time within which to file their transcript on appeal in this court.

The plaintiffs now insist that the order made by Judge Eakin was void for want of jurisdiction by reason of his disqualification.          MOTION DENIED.

*Mr. James L. Hope,* for the motion.

*Mr. Edward E. Gray* and *Mr. C. W. Robinson,* contra.

BROWN, J.—Section 45—1, Or. L., provides:

"No judge of a circuit court of the State of Oregon shall sit to hear or try any suit, action or proceeding when it shall be established, as hereinafter provided, that such judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. In such case, the presiding judge shall forthwith transfer the suit or action to another department of the same court, or call in a judge from some other court, or apply to the chief justice of the supreme court to send a judge to try the case * * ."

From the foregoing provision of the statute, it appears that the prohibition contained in the statute disqualified Judge Eakin "to sit" in the trial of the case. It is likewise apparent from the statute that Judge Campbell was authorized to "try the case."

In *Sprague* v. *City of Astoria,* 106 Or. 253 (204 Pac. 956, 957, 206 Pac. 849), we wrote:

"The term 'trial' is defined thus: 'A trial is the judicial examination of the issues between the parties, whether they be issues of law or of fact.' Section 113, Or. L.; *Mulkey* v. *Day,* 49 Or. 312, 314 (89 Pac. 957); *Hillsboro Nat. Bank* v. *Garbarino,* 82 Or. 405, 409 (161 Pac. 703); *Warm Springs Irr. Dist. Co.* v. *Pacific Live Stock Co.,* 89 Or. 19, 22 (173 Pac. 265)."

And: "The meaning of the word 'hearing,' * * is to be determined from the character of its use in the statute. * * In equity, 'hearing' is a term with a well-understood content. Technically, it is 'the trial of the case, including the introduction of evidence, the argument of the solicitors, and the decree of the chancellor.' (Citations) * * As applied to courts, the word is said to be 'generally understood as meaning a judicial examination of the issues between the parties, whether of law or of fact.' (Citations.)"

Is an appeal a part of the trial? It was said in *Kearney* v. *Snodgrass,* 12 Or. 311, 314 (7 Pac. 309, 311):

"Until the right of appeal is created by statute it does not exist as a strict legal right."

In *Fisk* v. *Henarie,* 15 Or. 89, 90 (13 Pac. 760), Mr. Justice STRAHAN wrote:

"The right to an appeal depends entirely upon the statute. If the statute does not confer it, it does not exist."

In *City of Portland* v. *Nottingham,* 58 Or. 1 (113 Pac. 28), Mr. Justice BURNETT said:

"An appeal is not a matter of primary right. It is a privilege, and he who would enjoy that privilege must show some statute conferring it upon him."

For other expressions relating to the right of appeal, see authorities of this court collected in *Smith Securities Co.* v. *Multnomah Co.*, 98 Or. 418 (192 Pac. 954, 194 Pac. 430, 431).

1. The order of extension could have been made, not only by the trial court or the judge thereof, but also by the Supreme Court or a justice thereof: Par. 2, § 554, Or. L. Surely it could not be argued, in the event of making such an order, that this court, or one of its justices, had taken part in the trial. Nor can it be rightly asserted that the court that did make the order was without jurisdiction because of the disqualification of Judge Eakin to take part in the trial of the cause.

To appeal a case is to remove it to a higher court for review for errors of law occurring in the trial in the court below, or, as in equity cases, for retrial. An appeal may be taken from a judgment or decree and reviewed as prescribed by the statute of this state, and not otherwise: Section 548, Or. L. The alleged bias of Judge Eakin can in no way affect this case upon appeal. The legitimate purpose of that statute is to remove a prejudiced judge from sitting at the trial. It cannot be invoked by enlarging the meaning of the statute to defeat a review of a cause in this court.

We have read and considered all the cases from other jurisdictions construing like statutes. However, none of the decisions are controlling here.

In our judgment, the language of this act is plain, and means just what it says and not something more.

The motion is denied.

MOTION TO DISMISS DENIED.

ON THE MERITS.

(226 Pac. 1111.)

REVERSED.

The plaintiffs instituted an action against defendants in the Circuit Court of the State of Oregon for Clatsop County, for the recovery of damages arising from the alleged breach of a written contract for the excavation of a basement of a proposed garage building.

Among other things, the . complaint alleges the execution of the contract, whereby defendants, for the consideration of $3,200, agreed to provide all materials and perform all work for the grading and excavation for a basement in the construction of a building on certain premises therein described. The work was to be performed in accordance with drawings and specifications prepared by one C. T. Diamond, architect. Copies of the contract and drawings are made a part of the complaint. It is further alleged that defendants entered upon the performance of the work as stipulated in the contract, but that they refused and neglected to complete the same and thereafter abandoned the contract and notified the plaintiffs and the architect that they would refuse to complete the work thereunder. Plaintiffs allege that they performed all the conditions of the contract on their part to be performed, and that the abandonment thereof by the defendants was without fault of the plaintiffs. They further allege

"That under article 5 of said contract hereto annexed and marked Exhibit A, it is provided that if the said contractor, meaning the defendants herein, in any respect failed or refused to prosecute the work under said contract, or failed in the performance of

any of the agreements in said contract contained, the owner, or these plaintiffs, would be at liberty, after three days' written notice to the contractor, * * to provide any such labor or materials necessary to complete said contract, and to deduct the costs thereof, from any money due or thereafter to become due to the defendants under said contract, and said article 5 further provided that in the event the architect mentioned in said contract should certify that the refusal, neglect, or failure of the contractor * * was sufficient ground, the owner, meaning the plaintiffs herein, would have the right, and be at liberty to terminate the employment of the *contract,* meaning the defendants herein, and terminate said contract, and to thereupon enter upon said premises, take possession thereof, and complete the work included under said contract, and that in the event the costs of completing said contract shall exceed any balance due said contractor * * , then and in said event, said contractor * * shall pay to said plaintiffs such difference."

Plaintiffs then aver that Diamond, the architect, certified to defendants' refusal, neglect, and failure to proceed with, and complete, the contract, and that such negligence and failure was sufficient ground for plaintiffs to terminate the contract and enter upon the premises and complete the work as set forth therein. They then aver their successive steps in taking over the work and the completion thereof.

Plaintiffs demand judgment against defendants, and each of them, in the sum of $1,793.73, in accordance with the audit and certificate of the architect, by reason of expenses incurred in the completion of the excavation, and for the additional sum of $1,400 damages, incurred for loss of rental profits of the premises.

The defendants filed separate answers. Defendant William H. Potts, after denying each and every allegation contained in plaintiffs' complaint, made a separate and affirmative defense, alleging that he entered into an oral contract with the plaintiffs for the excavation of a basement in the construction of a building in accordance with a certain penciled sketch or plan made by C. T. Diamond, architect employed by the plaintiffs; that the consideration for the excavation was $3,200; that it was understood and agreed that the work should be performed by the contractor before the first day of March, 1920, or as soon thereafter as the same reasonably could be accomplished; that relying upon such contractual arrangements, the defendant assembled his force of men and materials and actively prosecuted the work until his contract was substantially completed. He avers that the plaintiffs failed and neglected to pay him therefor, except that during the month of March, 1920, they paid him sums aggregating $2,006, and that there is now justly owing to him upon the contract the sum of $1,194. He then alleges:

"That as the work progressed, certain other matters and circumstances arose that affected and colored the transaction, and became inseparably connected with it, as set forth in the following paragraphs";

Defendant alleges that in the original contract no mention was made of a surety for either party, but that later the plaintiffs asked him if his codefendant, W. E. Schimpff, would act as surety. He alleges that Schimpff had no interest in the contract other than that of surety; that plaintiffs submitted to defendant a writing, which they asserted contained the terms of the oral contract, but that defendant, upon examining this writing observed:

112 Or.—35

"that it contained many strange and foreign provisions, and particularly that it required him to complete the job by February 15, 1920";

that defendant refused to execute the writing, and plaintiffs thereupon agreed to have another writing prepared by the architect, setting forth the contract. Defendant alleges that he lives 10 or 12 miles distant from the City of Astoria:

"that on this occasion he had just finished the day's work on the contract, it being after dark in the evening, and was then hastening to catch his train for his home, having not a moment to spare; that these facts were well known to the plaintiffs, who well knew that defendant could not then inspect the instrument or discuss the matter; that nevertheless, defendant then informed him that he had absolutely no time, that as it was, he would have to hurry greatly to catch his train, and suggested that the matter be taken up on the following day; that thereupon, the plaintiffs specifically informed defendant that the paper was all right; that it was, but the written expression of their oral contract; that it was just as he wanted it; that it was all right; that it was another instrument from which the objectionable features had been eliminated, and that they wanted the contract signed up and out of the way, and urged him to then execute the instrument; and thus, in his great haste, and fully believing and absolutely relying upon these statements and representations of the plaintiffs, defendant signed the instrument without reading or even glancing at its contents, and then turned and departed, leaving the paper in their hands."

Defendant then avers his faithful and diligent prosecution of the work of excavation to the grading stakes, as set by a representative of the city engineer's office. He alleges his substantial completion of his contract, but that the contractors who were preparing

to erect a building on the premises for plaintiffs asserted that the lands were not excavated to the level shown by the plans and specifications; that the plaintiffs thereupon demanded that defendant perform the excavation; that defendant refused and asserted that his original contract was already performed; that thereupon plaintiffs desired him to perform this additional work at all events, and promised and agreed to pay him therefor a reasonable and proper sum, in addition to the $3,200 theretofore agreed upon; that defendant accepted the offer and actively commenced the excavation of this further work; that after defendant had started the new work, heavy rainstorms set in and continued intermittently for many days, and that owing to the heavy storms and the activities of other contractors employed by the plaintiffs in preparing trenches for the building, great quantities of earth were caused to fall from the walls of the excavated premises; that as the work neared completion, plaintiffs commenced to dispute defendant's right to compensation under his new contract, and that a reasonable and proper amount due defendant for such additional work was $4,825.

Defendant Potts, for a further and separate affirmative defense to the complaint, avers that the cause of action set forth in plaintiff's complaint is founded upon a written instrument signed by plaintiffs and defendants a week or ten days after the commencement of the execution of their oral contract, and that the written contract is entirely void.

Defendant W. E. Schimpff, answering, denied each· and every allegation of plaintiffs' complaint, and, for a further and separate affirmative answer, adopted as his own the affirmative defenses made and filed herein by his codefendant, William H. Potts, and

averred that the same were true.  He alleges that he signed the penciled sketch or plan at the request of his codefendant Potts a number of days after the latter had commenced the work of excavating; further, that the only interest or connection that he ever had with the transaction between the plaintiffs and Potts was that of a surety.  He avers.:

"That on the 8th day of February, 1920, the same being a Sunday, at the request of the plaintiff, S. W. Lovell, this defendant wrote and duly sent to plaintiffs that certain letter attached to plaintiffs' complaint as Exhibit B thereto; that he sent the same in response to a query from the said plaintiff, S. W. Lovell, as to whether he was willing to act as surety for his codefendant herein, and that he intended thereby to bind himself to act as such surety, and, at that time, in a general way, thought and understood that the plaintiffs and William H. Potts had entered into some written contract."

Plaintiffs, replying, denied all new matter contained in the separate answers filed by the defendants.

Trial resulted in a judgment for plaintiffs in the sum of $1,793.73.

Upon appeal, the defendants assign a number of errors and assert that the judgment is not supported by law or the evidence; that the court erred in receiving and rejecting evidence, and particularly in treating the architect's certificate as being conclusive and binding upon all the matters certified to him; in taking certain questions from the jury, and in directing the jury to find for the plaintiffs in the sum of $1,793.73 in any event.

                    Reversed.    Rehearing Denied.


For appellants there was a brief over the names of *Mr. Edward E. Gray* and *Mr. C. W. Robison*, with an oral argument by *Mr. Gray*.

For respondents there was a brief over the names of *Mr. G. C. Fulton, Mr. J. L. Hope* and *Mr. A. C. Fulton,* with an oral argument by *Mr. G. C. Fulton.*

BROWN, J.—2. The defendant Potts alleges, and attempts to prove, fraud practiced upon him by the plaintiffs in the execution of the contract sued upon. He claims that he signed it when he was in a hurry to catch a train. He asserts that it contained matters foreign to an oral agreement made between the parties preceding the signing of the written contract. We are not told by his pleading wherein the contract differs from the oral agreement he claims to have made with the plaintiffs, except as to the time when the excavation was to be completed. The contract upon which the action was brought provides that the excavation should be completed on February 15th, whereas he asserts that he was to have until March 1st. The copy of the contract introduced in evidence by the defendants provides that the excavation shall be complete by March 1st, and in this action no damages for rental were collected on account of the delay in the construction, nor did the plaintiffs take over the work of excavation until the month of April. The defendants also claim that prior to signing the particular contract bearing date of February 2d and set forth in the pleadings herein, the plaintiffs submitted another form containing provisions not agreed to, and that they refused to sign the same. If such is the fact, the defendants were put upon their guard in the matter of signing any writing submitted by the plaintiffs, without first reading it.

The law in reference to the execution of contracts is well settled.

The facts stated by Mr. Potts do not except him from the general rule regulating the signing of a contract without reading it.

"It will not do," says Mr. Justice HUNT in the case of *Upton* v. *Tribilcock,* 91 U. S. 45 (23 L. Ed. 203, see, also, Rose's U. S. Notes), "for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission."

In the case of *Chicago etc. Ry. Co.* v. *Belliwith,* 83 Fed. 437 (28 C. C. A. 358), Mr. Justice SANBORN said:

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. * * If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party * * . This is a just and salutary rule, because the other contracting party universally acts and changes his position on the faith of the contract."

On subject of signing contracts in ignorance of their contents, see valuable note in 138 Am. St. Rep. 810.

On March 24, 1920, the defendant William H. Potts addressed a communication to the plaintiffs, reading in part, as follows:

"Gentlemen:

"To expedite the work of your building, and to assist the Gilpin Construction Company to continue their concrete work, we are willing to co-operate with them and allow them to take over all necessary shor-

ing and excavating that will be necessary along all walls of the present excavation where your building is to be erected * * .

"We agree to allow this work to be done on a cost plus basis, and that the cost of same will be deducted from the balance due us on our contract. * *

"We will * * agree to complete the balance of the excavation without causing delay * * and without further loss to yourselves."

The following communication shows that defendant Potts was treating the written contract as valid and binding, as late as August following the making thereof:

"August 2, 1920.

"Mr. S. W. Lovell, and Norris Staples:

"You, and each of you, will please take notice, wherein, by virtue of a certain agreement made and entered the 2d day of February, 1920, by and between William H. Potts, party of the first part, in which said agreement he was designated as the contractor, and S. W. Lovell and Norris Staples, parties of the second part, in which said agreement you, and each of you, was designated as the owner; in Article 13 of said agreement there is provision for a board of arbitration * * .

"Whereas, there are certain matters of payment and allowances * * now being claimed by you as owners, and which is likewise claimed by William H. Potts as contractor to be due to him the said William H. Potts * * demands said board of arbitration in compliance with said contract, and, upon your failure to comply, will deem the contract in said particular as breached by you."

Until the commencement of this action, there is not a word from defendants indicating that the contract is tainted with fraud.

3. The respective counsel discuss the effect of the architect's certificate. On August 4, 1920, C. T.

Diamond, architect, by virtue of the provisions of Section 5 of the contract, issued to the plaintiffs a certificate, in which he certified, among other things:

"That on or about the third day of April, 1920, without fault of said owners, the said contractors abandoned said contract, and refused to proceed further with the same or complete the work thereunder, and that previous thereto, without fault on the part of said owners, said contractors failed and refused to prosecute the work specified under said contract with promptness and diligence, and that thereafter, and on April 7, 1920, I certified to S. W. Lovell and Norris Staples, said owners, that the abandonment of said contract by said contractors was sufficient grounds to terminate said contract with said contractors.

"I further certify that the contract price to be paid said contractors under said contract was the sum of $3,200; that I have audited and checked all sums so paid said contractors under said contract, and all sums and expenses incurred by said owners in furnishing materials and finishing the work of said contract, and all sums paid by said owners due from said contractors for work and materials furnished under said contract. * * Total paid contractors and by owners for finishing work, $4,993.73. Less contract price, $3,200. Balance due owners by contractors, $1,793.73.

"I certify that from my audit, there is now due said owners from said contractors, the sum of $1,793.73, as expense incurred by owners in completing said contract, over and above said contract price; * * that the owners were delayed in occupying the said premises * * for a period of two months * * and default occasioned a damage to the owners in the sum of $1,400, * * rental * * for two months.

"And of all the foregoing, you will take due notice as a certificate conclusive upon you, and each of you, under said contract."

It is not contended here that the architect's certificate is conclusive as to the amount of damage sus-

tained by the owner on account of rental, but counsel for plaintiffs maintain that under the provisions of article 5 of the contract, the architect's certificate is conclusive as to the amount of the expense incurred by plaintiffs in finishing the work of excavation, and, if not impeached, is likewise conclusive in the matter of the contractor's failure to complete the work and his alleged abandonment of the contract.

Under the provisions of article 5 of the contract, the architect's certificate is made conclusive as to the materials furnished the contractor or for expenses incurred in finishing his work of construction. That article provides, in part:

"The expense incurred by the owners, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by Architect ———, whose cerificate thereof shall be conclusive upon the parties."

But the architect's certificate is not conclusive, except where it is made conclusive by the parties themselves. While another provision in that article authorizes the making of a certificate by the architect, involving the completion, or the lack of completion, of the excavation contract, or the abandonment thereof by the contractor, it does not make such certificate conclusive. There is much authority to the effect that plain language is required to make an architect's certificate final between the parties. Its conclusive character is not supplied by implication.

This court has written:

"Parties to a contract may stipulate that the estimate of the work done, and the amount due under the contract, shall be made by a third party, and shall be final and conclusive. There are a multitude of cases so holding. But an estimate of the work done or

amount due is not conclusive, in the absence of a provision in the contract to that effect." *Williams* v. *Mt. Hood Ry. & Power Co.*, 57 Or. 251 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177).

See, also, *Hoskins* v. *Powder Land & Irr. Co.*, 90 Or. 217 (176 Pac. 124); *Sweeney* v. *Jackson County*, 93 Or. 96 (178 Pac. 365, 182 Pac. 380).

In discussing the finality of the certificate of an architect, Mr. Justice PECKHAM, in *Mercantile Trust Co.* v. *Hensey*, 205 U. S. 298 (51 L. Ed. 811, 10 Ann. Cas. 572, 27 Sup. Ct. Rep. 535, see, also, Rose's U. S. Notes), said:

"To make such a certificate conclusive requires plain language in the contract. It is not to be implied: *Central Trust Co.* v. *Louisville etc. R. Co.*, 70 Fed. 282, 284."

In the case of *Spokane County* v. *Pacific Bridge Co.*, 106 Or. 550 (213 Pac. 151), this court said, in relation to the provisions of a construction contract involving the decision of an engineer:

"The contract in the instant case made the decision of the engineer who supervised the work final as to the true construction and meaning of the profiles, maps, plans and specifications, but did not make his decisions in respect to performance of the work final and conclusive upon the parties, and therefore the cases do not apply which hold that where a contract for public work, in express terms, makes the decision of the engineer final as to the performance of the contract, such decision is conclusive on the parties. Plain language in the contract is required to make such a certificate conclusive: *Williams* v. *Mt. Hood Ry. & Power Co.*, 57 Or. 251, 258 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177); *Rogue River Assn.* v. *Gillen-Chambers Co.*, 85 Or. 113, 119 (151 Pac. 728, 165 Pac. 679); *Baumgartner* v. *Renton*, 96 Wash. 588 (165 Pac. 484); *Bavaria Investment Co.*

v. *Washington Brick, Lime & Sewer Pipe Co.,*
82 Wash. 187 (144 Pac. 68), and earlier Washington
cases cited therein; 9 C. J. 773.''

The plaintiffs contend that by reason of the archi-
tect's certificate they should recover; that the defend-
ants are precluded from maintaining that the contract
was performed, and, hence, that recovery cannot be had
for extra labor. And the court, basing its instruc-
tion upon the conclusiveness of the architect's certi-
ficate as to all matters certified, instructed the jury
to return a verdict for the plaintiffs in the sum of
$1,793.73, at all events.

If, upon the trial, plaintiffs established the aban-
donment of the contract, as averred, and that the
same was completed by the plaintiffs, the architect's
certificate in the sum of $1,793.73 was conclusive as
to expense incurred by the owners in completing the
contract, over and above the contract price. However,
under the facts and the testimony of record, there
was a real issue as to completion of the contract and
compensation for extra work, that should have been
submitted to the jury, and the court had no right
to presuppose that the architect's certificate was
conclusive as to the matter of abandonment of the
contract and constituted a bar to the contractor's
claim for extra services.

William H. Potts, one of the defendants, testified
that he did excavating along particular lines; that
he entered into an excavation contract with the plain-
tiffs and commenced work about February 2d; that
''I assembled a crew of men, trucks, grading imple-
ments, and tools necessary to carry on the work. The
workmen there cut a trench down about the center
of the basement to put in a trap.''

He further testified that along about the 24th or 25th of February, thinking he was down to grade, he called on the plaintiffs and asked them to have the grade stakes set; that in response thereto an engineer was sent from the city engineer's office, who set the stakes; that he completed the grading as indicated by the stakes set by plaintiffs; that he had in his employ when the rough grading was completed, 20 men, 6 trucks and 6 teams; that he discharged his crew of men, and laid off the trucks with the exception of a couple of wagons and a team to clean up; that he tore out his trap "and started to proceed to level up." He testified that the plaintiffs came to him and said:

"You are * * practically through here, what's the matter with Gilpin Construction Company * * , the people who have this contract for the erection of the building, coming in here and starting on this upper level?"

He further testified that a representative of the construction company asserted that the excavation did not conform to the plans; that the plaintiffs then came to him and said:

"There is a mistake of some kind." "I said, 'I am down to the grade stakes your engineers have set.'"

Plaintiffs claimed that there was trouble somewhere and there had to be some more dirt taken out, and wanted to know if the contractor would remove it. They said:

"You go ahead and take this dirt out and we will get together and pay you, if there is anything, whatever it comes to."

Defendant Potts testified that with that assurance he went ahead and removed the extra dirt; that

while engaged in removing the extra dirt, rains commenced to fall about March 1st.    He said—

"that the banks began caving in and the dirt kept coming in from every hand.    We would take out dirt and mud and water and stuff, and the next morning it would be about the same again, all back in again."

He testified that this condition lasted for about 6 weeks or 2 months; that at times the water was 3 feet deep in the basement; that the walls did not fall under his original contract, but that as a result of the heavy rains that fell during the time of performing the extra work, the walls caved in to the extent of about a thousand yards of dirt; that he continued under his contract for the removal of the extra dirt until about the 5th or 6th of April; that the plaintiffs then informed him that he wasn't making satisfactory progress with the work and that they intended to terminate the contract.    Witness testified that he advised the plaintiffs that he was broke and had expended all his money, but that if he could get the balance due he could continue until all the dirt was out.    He further testified:

"One of the plaintiffs said, 'Why, that is all under your old contract, the original contract.'    I said, 'No, it is not under the original contract.    I was down to grade.    I was down to my grade stakes.    It can't be under the original contract.'"

That Potts performed, and that plaintiffs received the benefit thereof, is the contention of the witness.

4. It is contended by defendants that Schimpff's only relation to the contract is that of a surety, and that plaintiffs knew it.    Plaintiffs argue that he is a principal, and seek to show that relationship by the contents of a letter procured from him as a result of their own request to Schimpff that he act as surety

for Potts. Plaintiff Lovell testified that he said to Schimpff: "Will you go the bond?" and that Schimpff answered: "Sure. I will give you a letter." That letter reads:

"Astoria, Oregon, February 8, 1920.
"Messrs. Sherman, Lovell, and Norris Staples,
      "Astoria, Oregon.
"Gentlemen:
    "In the matter of the contract which you have entered into with W. H. Potts, I wish to assure you that I am willing to assume all the responsibilities of Potts in the making of the contract he has made with you. The purpose of this letter is to have you consider me just as if I had signed the contract with Potts.

"Yours very truly,
"W. E. SCHIMPFF."

Notwithstanding there is some evidence tending to show that the parties to the contract knew the relationship of Schimpff to that contract, upon trial he was denied the right to show what he asserts to be his true relation to the parties thereto.

When the parties to a contract know that one of the parties thereto is a surety, such fact may be shown by parol: *Hoffman* v. *Habighorst,* 38 Or. 261 (63 Pac. 610, 53 L. R. A. 908); *Lumbermen's Nat. Bank* v. *Campbell,* 61 Or. 123 (121 Pac. 427), and cases cited therein.

This case should be reversed and remanded. It is so ordered.

REVERSED AND REMANDED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.