Argued January 18, affirmed as modified April 12, 1961

# COTTAGE GROVE LUMBER COMPANY v.
# LILLEGREN

360 P. 2d 927

*Sidney A. Milligan,* Eugene, argued the cause for appellant. On the briefs were Milligan & Brown, Eugene.

*Arthur C. Johnson,* Eugene, argued the cause for respondent and cross-appellant. On the briefs were Johnson, Johnson & Harrang, Eugene.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

WARNER, J.

The plaintiff, Cottage Grove Lumber Company, is the assumed business name of a partnership consisting of Hugh Roberts and Verne M. Post.

This case was commenced by the lumber company as an action at law for a judgment against defend-

ants in the amount of $20,000 under circumstances which will later appear. Defendant Phillips defaulted and judgment was taken against him. Defendant Lillegren filed an equitable defense and counterclaim. The counterclaim sought to impress a lien upon certain stock held by the company as security for a loan of $9,000 made by Lillegren to defendant Phillips. From a decree dismissing their complaint, plaintiffs appeal, and from the decree dismissing the Lillegren counterclaim, he cross-appeals.

The transactions which produced the instant litigation are somewhat complicated, but the statement which follows reveals the essential facts. They are also in substantial accord with the findings of the trial court.

Prior to February 3, 1956, defendant Phillips obtained an option to purchase all of the outstanding stock of the Musick Mining Co., a corporation, for the sum of $75,000. The option required a payment of $20,000 on or before February 3, 1956, and the further sum of $55,000 on or before August 15, 1956. The property owned by the mining company carried a substantial stand of merchantable timber on its patented claims. Apparently, Phillips hoped to finance this purchase price from the sale of this timber and thereafter sell the mining property to others. We feel certain that plaintiffs were interested in acquiring this timber from Phillips and had knowledge of his deal for the mining stock for sometime prior to February 3, 1956, and that this interest explains all of their subsequent dealings with Phillips.

On February 3, 1956, Phillips obtained the necessary sum of $20,000 for the down payment from the plaintiff lumber company with its knowledge at that time that this amount was to be used by Phillips as

the down payment on the option and that it was, in fact, so used by Phillips that day.

◼ Coincidentally with his receipt of the $20,000 from plaintiffs, Phillips executed a written agreement with plaintiffs (hereinafter called Contract No. 1), wherein he agreed to deliver to plaintiffs enough timber of specified kinds and sizes of a value equal to $20,000, and thus pay the $20,000 which he applied on the mining company contract. This he covenanted to do within 90 days after February 3, 1956. It provided for liquidated damages measured as an amount equal to the difference between the value of the logs actually delivered and the sum of $20,000. Contract No. 1 was co-signed by defendant Lillegren. Lillegren claims he executed the agreement only in the capacity of a surety for Phillips. Lillegren's contention gives rise to the principal issue on this appeal. This was resolved in favor of Lillegren by the trial court. It is likewise our conclusion.

On the same day or very near the date of the execution of Contract No. 1, on February 3, 1956, the lumber company and defendant Phillips, alone, executed and entered into another agreement (hereinafter referred to as Contract No. 2). The uncertainty as to the exact date is because the two date lines in Contract No. 2 read "February —, 1956." But from plaintiff Roberts we learn that it was signed, as near as he could recall, "around a week or ten days after the signing" of Contract No. 1. Under Contract No. 2, the lumber company agreed to pay to defendant Phillips $46,500 for the timber located on the patented mining claims owned by the Musick Mining Co. and estimated to be 1,700,000 board feet. Pursuant thereto, the lumber company advanced Phillips, on August 15, 1956, the further sum of

$46,458.28, knowing that it would be used as part of the final payment which Phillips was required to make in order to complete his purchase of all the stock of the mining company and which, of course, would give him control of the timber covered by Contract 2. $46,000 of the amount was in fact used for that purpose on that date. Lillegren's signature does not appear on this contract.

Defendant Phillips had no funds of his own with which to complete his purchase from the mining company other than the amount to be received under Contract No. 2. He needed $55,000 in all to complete payment. In order to close the deal for the mining stock he borrowed the sum of $9,000 from defendant Lillegren.

Prior to making delivery of plaintiffs' check for the sum of $46,458.28 on August 15, 1956, the lumber company insisted upon some form of security for Phillips' performance under Contract No. 2 and received from him a bill of sale, dated August 15, 1956. This bill of sale purports to transfer to Neil Brown, an attorney for and agent of the lumber company, all the outstanding stock certificates which Phillips was purchasing from the mining company. The trial court found, as do we, that the bill of sale, although absolute on its face, was intended by Phillips and the lumber company only as a security instrument to secure the sums advanced by the lumber company to Phillips; that is, the $20,000 advanced on February 3, 1956, and the $46,458.28 advanced on August 15, 1956, to complete Phillips' purchase of stock in the mining company, and to guarantee to the lumber company good and sufficient title to the timber purchased under the terms of Contract No. 2.

Upon receiving the balance of the purchase price

under its agreement with Phillips, the owner of the stock in the mining company delivered all the outstanding stock certificates in that company, endorsed in blank, to attorney Brown, as agent for the lumber company. After that date the lumber company proceeded to exercise all rights and incidents of ownership over the mining company and its assets. In so doing plaintiffs harvested and removed 1,739,170 board feet of merchantable timber from the patented claims of the Musick Mining Co. By the terms of Contract No. 2 the lumber company was to pay $46,500 for 1,700,000 board feet at a price of $27.35 per thousand with the price to be adjusted if the scale proved to be more or less than 1,700,000 board feet in accordance with the market price at the time of logging. As a result of plaintiffs' operations on the mining company property, they received timber of the value of $47,566.35.

Plaintiffs also contracted to sell to Lane Minerals, Inc., an Oregon corporation, the real property of the Musick Mining Co., exclusive of the timber thereon, for the sum of $31,500, upon which $20,000 had been paid at the time of trial, with $11,500 held in escrow pending the settlement of the interest claimed by Lillegren in the Musick Mining Co. and its assets. As a result of the foregoing operations, the lumber company had thereby received the sum of $20,000 advanced to Phillips on February 3, 1956, and also received timber of the value of $47,566.35 in return for the payment of $46,458.28 which it had advanced to Phillips on August 15, 1956, and had a further interest in the $11,500 held in escrow.

Defendant Lillegren's position is that plaintiffs by their disposition of the assets of the mining company under their foreclosure have already received pay-

ment for the advance of $20,000, made under Contract No. 1, and that to now suffer judgment for them against him in that amount would represent a double recovery of that loan, and hence an unjust enrichment in their favor.

Appellants in their first brief confine themselves to a single proposition, i.e., the trial court erred in finding that Lillegren executed Contract No. 1 only as a guarantor for the performance of Phillips' obligations. Appellants decry it as an attempt upon the part of the court to vary or alter the terms of a written contract and to make a new agreement between the parties. Our own reading of the entire record confirms our concurrence with the trial court's findings of fact and its conclusion predicated thereon and we, therefore, here limit our observations to appellants' narrow and sole challenge to the decree.

It is true, as appellants represent, that Contract No. 1 nowhere describes Lillegren as a guarantor and nowhere alludes to the fact of suretyship. Throughout that instrument defendants Phillips and Lillegren are referred to in terms of joint-obligors. However, the rule is that parol evidence may be introduced to show that a party who appears ostensibly as an absolute co-obligor was actually intended to be only a surety on the promise when the parties to the contract know that one of them executed the instrument in that capacity. *Lovell v. Potts,* 112 Or 538, 558, 207 P 1006, 226 P 1111 (1924); *Lumbermen's Nat. Bank v. Campbell,* 61 Or 123, 126, 121 P 427 (1912); *Hoffman v. Habighorst,* 38 Or 261, 265, 63 P 610 (1901); 9 Wigmore, Evidence (3d ed), 122, § 2438; 32 CJS 958, Evidence § 985d.

We think the evidence here reveals beyond any doubt that plaintiffs were fully advised as to the

capacity in which Lillegren executed Contract No. 1; and that he signed it as a surety and not otherwise. Phillips had approached plaintiffs sometime in January, 1956, in the hope of securing an advance of $20,000 to place himself in a position to make the first payment due on the mining company contract on February 3, 1956. Feeling uncertain about Phillips' ability to deliver logs of that value in 90 days in payment of an advance in that amount, plaintiffs declined to go forward with the deal. It was at this juncture that Lillegren was brought in by Phillips. Lillegren was known to plaintiffs to have sufficient timber of his own to make good if Phillips failed and, therefore, was acceptable to plaintiffs as a guarantor of Phillips' obligations.

Plaintiff Post was asked after he had indicated that plaintiffs had refused to advance the $20,000 on Phillips' sole signature: "And then was it you or Mr. Roberts wanted someone else to join with him or sign with him on that agreement [Contract No. 1] as security?" And he answered, "We wanted security. If we were going to advance twenty thousand dollars we wanted our money secured." The testimony of Post's partner, Roberts, is even more positive. Roberts was asked: "Did you not state in your deposition that Mr. Lillegren was on the paper [Contract No. 1] to guarantee performance or to guarantee delivery of the logs?" And his response was: "That's what he was there for was to guarantee delivery of those logs, yes."

In the face of that evidence from the mouths of plaintiffs neither the trial judge nor this court could find that Lillegren executed Contract No. 1 other than as a surety.

■■ We have previously indicated that plaintiffs-

appellants have confined themselves to the one proposition, i.e., the court erred in its holding that Lillegren was a guarantor on Contract No. 1. We note, however, appellants' delayed challenge to defendant's claim that the $20,000 debt of Phillips has been paid, as an amount derived through plaintiffs' acquisition of the mining stock pledged by Phillips as security, subsequently possessed by plaintiffs and thereafter used by them to make sale of the mining company premises for $31,500. They contend Lillegren cannot assert payment of the Phillips obligation for $20,000 when plaintiffs have an undetermined claim against Phillips. This appears for the first time in appellants' reply brief. We find no merit in this untimely assertion. We find no evidence of an "undetermined claim" and even if existent, their proposition would be inapplicable in this suit. Nor do the authorities cited by plaintiffs support their contention. The cases upon which they rely, among other things, do not involve claims of sureties.

■ A surety may proceed in equity against the creditor for protection and relief as to the surety's rights and liabilities and compel a release from liability by reason of the creditor's acts. 72 CJS 755, Principal and Surety § 299b.

■■ One of the burdens imposed upon a creditor is the exercise of good faith toward the surety in preserving, applying or disposing of any security held by him or its proceeds, not only for the creditor's security, but for the surety's indemnity as well; and this rule applies whether the security was obtained at the time of, or subsequent to, the surety's assumption of liability. 72 CJS, supra, 749 § 289; 50 Am Jur 980, Suretyship § 116; Stearns, Law of Suretyship (5th ed), 105, § 6.1; Simpson, Suretyship, 195, § 45. The

course pursued by plaintiffs in the instant matter after securing possession of the pledged mining stock brings them fairly within the ambit of the foregoing rules.

■ Under the circumstances, there is no occasion to address ourselves further to plaintiffs' appeal, except to observe that we have examined the record in its entirety and find ourselves in accord with the trial court that Lillegren sustained his defense to plaintiffs' claim to a judgment against him for $20,000 as a co-signor of Contract No. 1.

We now give attention to Lillegren's counterclaim derived from his advance of the $9,000 to defendant Phillips to place him in a position to make the last payment due as of August 15, 1956, and for which Lillegren seeks a determination that plaintiffs' possession of the mining stock and proceeds received from the sale of the assets of the mining company is subject to an equitable lien in favor of Lillegren as security for said sum of $9,000.

From a reading of the opinion of the trial court we learn it took jurisdiction of the counterclaim and found the sum of $9,000 claimed by defendant in his counterclaim was a loan by Lillegren to Phillips and there was no liability on the part of plaintiffs to repay Lillegren even though plaintiffs had knowledge of the Lillegren loan and the facts surrounding its making. The court thereupon dismissed with prejudice the counterclaim relating to the loan with its prayer for judgment against plaintiffs in that amount and an equitable lien against the mining stock or the proceeds accruing from sales made by plaintiffs of assets of the mining company.

Lillegren's claim for an equitable lien as security is predicated upon the proposition that the mining

stock was owned by Phillips and that plaintiffs held it only as security for debts due and owing from Phillips to plaintiffs and while so held by plaintiffs, Phillips had orally given Lillegren a lien against a one-half interest in the stock as security for Lillegren's $9,000 loan, entitling Lillegren to judicial declaration of his equitable lien. This counterclaim is found for the first time in Lillegren's amended answer to plaintiffs' amended complaint.

Lillegren's claim to an equitable lien, if allowed, would have been adverse to such interest as defendant Phillips had in the stock. But neither Lillegren's answer nor his amended answer were ever served upon Phillips. We have earlier pointed out that Phillips never appeared herein and suffered a default judgment to be taken against him in terms of plaintiffs' complaint. This was long before Lillegren had filed his amended answer to plaintiffs' complaint.

So far as the trial court record is concerned Phillips had no knowledge that any kind of a lien was sought by Lillegren against his property. Phillips for want of service or other notice was denied his day in court and an opportunity to defend against Lillegren's claim that he owed Lillegren the sum of $9,000 or any part of that amount and if any subsisting indebtedness was found that it was not secured by a lien upon his mining stock or otherwise.

■ In equity our statutes have been construed to permit judgments between co-defendants arising out of equitable counterclaims. See *Hough v. Porter*, 51 Or 318, 375, 95 P 732, 98 P 1083 (1909); *Knighton v. Chamberlin*, 84 Or 153, 159, 164 P 703; and *Huson v. Portland & Southeastern Ry. Co.*, 107 Or 187, 207, 211 P 897, 213 P 408; Clark, Code Pleading (2d ed),

676, § 105; Pomeroy, Code Remedies (5th ed), 1111, § 684.

But to enjoy the privilege of such a judgment adverse to a co-defendant, Lillegren was under the duty to serve such party or his attorney of record, if any, with a copy of his amended answer which pleaded his claim to an equitable lien. *Hough v. Porter,* supra, at 377; Pomeroy, Code Remedies, supra; 71 CJS 351, Pleading § 172; 41 Am Jur 510, Pleading § 317. This Lillegren did not do.

Under the circumstances, the trial court was without jurisdiction to consider the equitable counterclaim. The court, notwithstanding, received evidence respecting the counterclaim and dismissed it with prejudice. For the reasons above given it should have been dismissed without further consideration, thus reserving to Lillegren the right to seek his remedy in another suit if he so desires and wherein Phillips and the plaintiffs here are made parties defendant.

With this modification respecting the decree as to the counterclaim, the judgment below is affirmed.