This was an action brought for the reasonable value of certain services performed by the plaintiff, as a contractor, for the defendant, in grading and building a portion of defendant's railroad in Klamath County, Oregon; in clearing a portion of the right of *Page 266 
way; in making fills and doing other work incident to the grading, and in finding labor and furnishing materials for the work. The complaint alleges that the services and materials were reasonably worth the sum of $6,900.75, and that defendant has not paid any part thereof except the sum of $4,887.40, and judgment was demanded for the balance.
The defendant answered, and admitted that the plaintiff performed labor and rendered services for defendant between August 22, 1917, March 8, 1918, in connection with the construction of the Klamath Falls Municipal Railway, of which defendant was general contractor; admitted that plaintiff cleared a portion of the right of way for the railroad; admitted that plaintiff performed labor in the construction of the grade, but alleged that such labor was performed by plaintiff pursuant to an express contract entered into between plaintiff and defendant about August 20, 1917, and executed in writing under date of September 8, 1917, whereby plaintiff agreed to do the construction work therein specified, within the time fixed for completion, and under the terms and conditions of the contract, a copy of which was attached and made a part of the answer. Defendant denied that the labor alleged to have been performed was performed at defendant's request, but alleged that it was performed pursuant to plaintiff's obligations, as set forth in the contract, and denied generally all of the other allegations in the first paragraph of the complaint.
By way of a further and separate answer, and by way of counterclaim, defendant alleged the written contract; alleged that defendant had kept and performed the obligations of this contract on his part; that plaintiff partially performed the construction work therein undertaken by him, to the amount of *Page 267 
$2,954.25, and that defendant had fully paid plaintiff for all work and all claims arising under the contract; that in pursuance to certain provisions in the written contract defendant had paid plaintiff, for work so performed under the contract and for money expended for the use of plaintiff, at his request, the total sum of $6,179.18. Defendant alleged that plaintiff is entitled to credit for work performed in the aforesaid sum of $2,954.25, and that plaintiff is entitled to credit for the return of materials furnished to him and charged to his account in the sum of $734.75, making a total credit of $3,689, leaving a balance in favor of defendant in the sum of $2,490.18. A statement of account was attached and marked Exhibit "B." Defendant then alleged that plaintiff, at the time the contract was entered into, represented to defendant that plaintiff was experienced in railway construction work, and insisted upon taking the work at a flat price per yard, rather than the customary manner of varying prices according to the classification of materials to be moved, and represented that he could complete the construction work by December 1, 1917, as stipulated in the contract; that, as a matter of fact, as disclosed by plaintiff's methods in handling the work, plaintiff was inexperienced in such construction work and did not progress with the work so fast as the same could have been done under capable management and efficient methods; that plaintiff did not complete the work by December 1, 1917, and that on December 3, 1917, he applied to defendant for an extension of time within which to complete the contract; that defendant suspended decision as to such extension, conditioned that plaintiff would cause the work under his contract to progress more rapidly; that about March 6, 1918, plaintiff having failed to progress so far as he should have, and plaintiff's *Page 268 
indebtedness to defendant being steadily increased, by reason of plaintiff's observance of Section 34B of the contract, plaintiff was notified of his various breaches of and delinquencies under the contract, and the defendant, as provided in Sections 12 and 13 of the contract, declared the contract terminated and abandoned.
Then followed a second separate answer and defense, by way of counterclaim, setting forth Exhibit "A," and alleging that plaintiff had neglected to obey and fulfill the terms of the contract, and had only partially completed the construction work therein undertaken by him; that defendant was compelled to and did complete the work; that owing to the advance in labor and material costs the expense of completing the construction work exceeded what the same work would have cost if done within the contractual period by $2,000, in which sum defendant claimed damages. The answer concluded with a demand for the sum of $2,490.18, and the additional sum of $2,000, and for costs and disbursements.
Exhibit "A" is the ordinary form of railroad construction contract, too lengthy to be recited here.
Plaintiff then filed a reply, denying the allegations and new matter in defendant's answer; admitting, however, that he represented to the defendant that he was experienced in railroad construction work; admitting that he did not complete the construction work by December 1, 1917; admitting that he applied to defendant for an extension of time within which to complete the contract, and admitting that the defendant had declared the contract terminated and abandoned. For a further and separate reply plaintiff alleged that the defendant, through his duly authorized agent, solicited plaintiff to enter into a contract for clearing the right of way and grading *Page 269 
the roadbed, with the work incidental thereto, on a portion of the proposed railroad then being constructed by defendant, and defendant at that time, through his agent, took plaintiff over a portion of the proposed railway line and showed him a definite and specified portion thereof which he proposed that plaintiff should clear and grade; that a large part of the portion so shown to him was of a soft material, easily handled and moved, and that after making a careful investigation thereof plaintiff offered to perform the work of clearing and grading all of said portion on the following terms:
"All excavations free haul 600 feet, including all excavated borrowed material: $.70 per cubic yard. $100 to be paid for the clearing and grubbing of the 100 foot right of way in addition to the amount paid for the wood cut and piled on the right of way; $1.75 per rick for all 24 inch wood cut and piled on said right of way, and, in addition, defendant agreed to pay plaintiff the actual cost to second party of laying pipe along said right of way."
Plaintiff alleged that in accordance with the agreement the defendant later prepared and submitted a written contract which it was understood between the parties should include all of the terms of said contract, but that defendant, in preparing said contract, wrongfully and fraudulently described the portion of said right of way by his station stakes in such manner as to exclude a large portion of the right of way which had been shown plaintiff and which he had agreed to clear and grade, said portion being the portion thereof which was easiest and cheapest to clear and grade, and included therein a large portion of right of way which consisted of rock and which was much more difficult and expensive to clear and grade; that defendant, after preparing said contract, induced plaintiff to sign the same, plaintiff believing *Page 270 
the portion of right of way described in the contract to be the portion which had been shown him, and not knowing of the fraudulent and wrongful conduct of defendant in that connection, and being entirely without fault; that at the time plaintiff signed said contract the defendant did not sign the same and refused to give plaintiff a copy of the contract, and thereby made it impossible for plaintiff to discover defendant's fraud, and that plaintiff, being ignorant of all these matters, continued upon the work of clearing the right of way and grading the same on a portion which was included in that shown to plaintiff, and upon which he had started to work on August 20, 1917, at the time of the verbal agreement, and which was also included in the portion of the right of way described in the written contract; that immediately upon discovering the false and wrongful conduct of defendant in the preparation of the written contract, the plaintiff refused to proceed under the contract; that thereupon defendant agreed that all of the remaining portion of the right of way which had been shown to plaintiff, which was understood and agreed to be the portion which he should clear and grade at the time of the verbal understanding, and an additional portion which could be cleared and graded at a much lower cost than that on which plaintiff was working, should be included in the written contract, the plaintiff to be paid the same unit prices for grading and cutting wood, and to be paid the reasonable value of the clearing and of the cost of laying pipe.
The reply then set out a number of alleged frauds, misrepresentations and delays on the part of defendant, which prevented plaintiff from completing the work, and upon this the parties went to trial. There was a verdict for the defendant, and a judgment upon *Page 271 
the verdict, from which judgment plaintiff appeals to this court.
The bill of exceptions in this case contains only the instructions of the court. The oral evidence adduced at the trial is not made a part of the bill of exceptions in any way, and unless there is error in the instructions, the judgment must be affirmed.
After a normal recital, the bill of exceptions sets forth certain instructions to which exceptions were duly taken. Omitting the formal parts, the bill of exceptions is as follows:
 "1.
"In his reply to this separate counterclaim by Mr. Strahorn, Mr. Ambrogetti denies the allegations in the counterclaim, and he further sets up, by way of his further and separate replies, some allegations of fraud on the part of Mr. Strahorn. First, he claims that in preparing the contract, Mr. Strahorn, through his agents, of course, fraudulently inserted some different pieces of work from those which Mr. Ambrogetti had agreed to do, and that, more than that, Mr. Strahorn defrauded him by failing to grant extensions as he had agreed, and by failing to pay wages as he had agreed, and by failing to supply materials as he had agreed, and some other reasons you will find set out in detail in the reply, and that, consequently, Mr. Ambrogetti could not perform his contract; and that it was Mr. Strahorn's fault that the work was not done and not the fault of Mr. Ambrogetti, and, finally, that Mr. Ambrogetti was discharged before the expiration of the contract, before the work was completed, Mr. Strahorn preventing compliance on his part with the terms of the contract, and that by virtue of this fraud Mr. Ambrogetti could not perform the contract, and consequently he claims that he would be entitled to recover, not the contract price, but the reasonable value of the work that was actually done. *Page 272 
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "2.
"Now, the affirmative allegations Ambrogetti sets up in his reply with reference to fraud and these other things, the burden of proof is upon him, of course, to establish that again by preponderance of evidence.
"In considering the case, you could perhaps save some time by deciding, first, whether there was any fraud in the making of the contract, or in the carrying out of its conditions, and if there was fraud, then you can take up the case on the basis of reasonable value, to decide what Mr. Ambrogetti should recover, if anything.
"On the other hand, if you should find there was no fraud, then the proposition of reasonable value would be out of the case, and you would have to take up the question of settlement on the contract as a basis, either the original contract as written, or if you find they made some oral changes, then according to the original contract as modified by the oral changes, and then, having determined the basis for the computation, you can consider the financial proposition involved between the two, but it will probably be impossible for the jurors to get together if some are figuring on the basis of fraud, and some of them are figuring on the basis of the contract. That would leave you open to consider the case as only involving work which was finished under the contract, without any modifications, or as a contract which was modified by oral agreements, or under no contract at all, but on the basis of reasonable value of the work done and materials furnished, in case you should find that there was fraud as alleged in the reply.
"To the giving of the foregoing instructions the defendant duly excepted, and the exception was duly allowed.
 "3.
"Now, a misunderstanding as to the terms of the contract wouldn't be sufficient to justify either party *Page 273 
in disregarding the contract. The purpose of the court and the purpose of the law is that the correct meaning of the contract should be arrived at, and both these parties would be compelled to perform according to the actual meaning of the contract, and it is only such fraud or conduct on the part of one party that makes it impossible and improper for the other party to continue the work that justifies the other party in disregarding the contract and suing for reasonable value.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "4.
"Now, any dispute as to quantities of work done or amounts of money paid would not be sufficient justification for either party to refuse to perform the contract unless it amounted to such fraud as would prevent the other party from doing his part.
"The presumption, of course, is ordinarily that people are honest and do what they agree to do, and the burden of proof of any fraud rests upon the party who makes it.
"Now, if you come down to a proposition of figuring reasonable value, it is pretty hard to define those words any more than they define themselves, but they mean, in this case, whatever it was reasonably worth, taking into consideration all the circumstances of the case, to do the work.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "5.
"Now, the length of this contract and the fine print in which some of the provisions are set out isn't any justification for anybody to refuse to comply with these provisions. Neither party is compelled to enter into any contract, and the presumption is, and the law requires, that if a man signs a contract, he is presumed to know and understand its provisions, and if he fails or refuses to read them over to find out, he, of course, cannot complain about *Page 274 
the opposite party. He has the liberty, of course, if he doesn't care to deal with people who have long contracts, to go and deal with somebody else. So the mere fact that this is a long contract and involves a good many paragraphs in fine print is no justification for Mr. Ambrogetti now claiming there are some provisions in there he didn't know anything about.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "6.
"There has been some testimony and some remarks that Mr. Ambrogetti is a foreigner and doesn't understand English very well, and that consequently a greater burden rested upon Mr. Strahorn to see that Mr. Ambrogetti thoroughly understood the contract and the conversations and dealings they had, more than if Mr. Ambrogetti could speak English. Now, on that proposition, when a man sets himself up as a contractor and starts out to deal with people, he isn't to be deceived or defrauded because he doesn't understand English or because he is of foreign birth, but, on the other hand, he isn't to be allowed to use that as an excuse to avoid liability under a valid contract. If that were the law, then any person who did not understand English at all would have an advantage which the ordinary man or American citizen wouldn't.
"Each party must stand by what he signs and carry out his agreements as they are written and signed in the ordinary understanding of the language used, but, of course, neither party would be allowed to defraud the other by deceiving him in some particular, to his injury.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "7.
"* * Mr. Strahorn is claiming some damages from failure of Mr. Ambrogetti to complete the work, and if you find, under these instructions, that he is entitled *Page 275 
to any damages on that point, you will allow him whatever damages the evidence shows he has suffered on that account.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "8.
"The defendant, Mr. Strahorn, has alleged that he has done and performed all things incumbent upon him to be done and performed under the terms of the contract, and further alleges that Ambrogetti has failed to fulfill his covenants in the contract by failure to complete the contract within the time stipulated. For delays against the terms of the contract, Strahorn has the right to declare the contract abandoned by Ambrogetti, and if you should find from the evidence that the work under such contract, if you find there was one, either the original written contract or oral modification, was not completed by Mr. Ambrogetti, and that was due to Ambrogetti's fault, Mr. Strahorn had the right to declare the contract abandoned.
"To the giving of the foregoing instruction the defendant duly excepted, and the exception was duly allowed.
 "9.
"By a Juror: May I ask one question, your Honor, as to the contract?
"By the Court: That will probably be all right.
"By the Juror: I would like to know if one party has failed to comply with the rules of this contract, does that let the other party at liberty to fail to do his part?
"By the Court: I will answer that by going back and repeating the substance of the instructions I gave.
"Misunderstanding as to the terms of a contract would not be sufficient justification for the party who misunderstands it to refuse to comply, nor would any dispute or difference as to quantities be sufficient unless it amounted to such fraud as would prevent the other party from performing. *Page 276 
"I might have a contract with you for the performance of work and I might fail in some particulars to carry out that contract, and yet if they were such failures as would not interfere with you in preventing you from completing the contract, you would be bound to go ahead and complete yours, and these other matters would be taken up as a matter of damages, but if my failure or my fault or my misconduct is such that you cannot go ahead with your contract, why then you would be justified in stopping, and I would then have to pay you whatever work you had done up to that time, on a reasonable value basis, and perhaps, although there is no contention in this case, might have to pay you damages, and so on. No trifles, of course, could interfere in a case of this kind, only substantial failure to comply with the contract, which makes it a practical impossibility for the other party to go ahead.
"In all dealings amongst men there are some things that have to be adjusted as you go along, but that, of course, could not extend to the point of injustice. That is about the easiest way to put it.
"To the giving of the foregoing instructions the defendant duly excepted, and the exception was duly allowed."
It will be noticed that, through a clerical error, plaintiff's exceptions in the above bill of exceptions are referred to as the defendant's.
AFFIRMED.
There are a few very technical objections taken to the instructions, but, considered as a whole, they constitute a plain, commonsense exposition of the law applicable to the case. *Page 277 
The first objection is to the use of the following language, "He claims that in preparing the contract, Mr. Strahorn, through his agents, of course, fraudulently inserted some different pieces of work from those which Mr. Ambrogetti had agreed to do," etc. It is argued that the phrase, "through his agents, of course," amounted to an expression of an opinion or an intimation by the court that it would be less probable that Mr. Strahorn would commit an act of fraud than that his agents would do so, and would have a tendency to excite the sympathy of the jury and give defendant an advantage not warranted by the facts. The objection is exceedingly fine spun, and has no real merit, especially as the evidence is not legally before us and cannot be here considered. The first paragraph of the further and separate reply states that "defendant, through his duly authorized agent, solicited this plaintiff" to enter into the contract, and that "his said authorized agent took this plaintiff over a portion of the line," etc. From aught that appears here the evidence may have been conclusive and uncontradicted that the whole contract had been prepared through an agent of defendant, as the pleadings would seem to indicate. The language used was not necessarily unfavorable to plaintiff. If, in fact, the evidence had indicated that the contract had been prepared by defendant's agent and the court had instructed the jury without qualification that in order to hold defendant liable for a fraud it must find that he fraudulently inserted something in the contract not contemplated by the parties, such an instruction would have been much more likely to have misled the jury than the instruction given. We will not presume error, but, on the contrary, will presume that the facts actually proven *Page 278 
justified the language used. In no event would the language used constitute reversible error.
It is urged in the brief that unusual provisions in a contract will sometimes place upon the party drawing it the presumption of fraud if such unusual provisions are to the disadvantage of the other party, and will place upon the party drawing the instrument the burden of proof. But in the instant case the provisions of the contract are not unusual; and especially in regard to the description of the work to be performed. Such descriptions are common to all such contracts and could not be left out of any. There is nothing in the bill of exceptions to indicate that the plaintiff was in any way incapable of reading and understanding the contract, or that he occupied such a relation of confidence with the other party as to excuse him for failure to do so. So far as appears he was dealing at arm's length with defendant and must be presumed to have known what he was signing. The instruction in that regard substantially followed the law as laid down by Mr. Justice BROWN in Lovell v.Potts, 112 Or. 538 (226 P. 1111, 1113), and is not objectionable.
Other instructions are objected to, as shown in the statement, but, taking them as a whole, they were entirely fair to plaintiff and presented the law in a plain, untechnical way, to the jury, and contain no reversible error.
The judgment is affirmed.
AFFIRMED.
BEAN, BROWN and COSHOW, JJ., concur. *Page 279